SOPHIA FRICK HILLEN, Appellant, *v.* ADRIAN ISELIN et al.,
Respondents.

The donee of a special power given by will to appoint an estate is invested
with an authority merely, and an appointment, so far as it transcends
the power, is invalid.

The execution of the power, however, will not be defeated because of
some provision in the appointment made which is in excess of the
power, when such provision may be eliminated without disturbing the
general scheme.

A general and unlimited power of appointment to be exercised in the
future is not void, because under it the donee may, without departing
from the express language, attempt to create an illegal estate; the legal
effect of the power is simply to authorize the donee to do what is
lawful.

The will of O'D., in his lifetime a citizen of Maryland, after a gift to four
trustees, named "the survivor and survivors,  *  *  *  and their suc-
cessors in the trust," of four-twentieths of his residuary estate, in trust to
pay the net income to his daughter E. for life, provided that after her
death the trust fund should be held by said trustees and their successors
in further trust "for such child or children" of E., "or his, her or their
descendant or descendants, and in such proportions and for such estate
and estates therein, either in fee or for a less estate, and with such limi-
tations and conditions" as E. might, by will, "name, limit and
appoint."  In case of the death of E. without having executed this
power of appointment, and leaving "living at her death any child or
children, or any descendant or descendants of any child or children of
hers who may have died in her lifetime," then it was directed that the
trust fund should be divided between them in the manner specified.  E.
died, leaving two children, a son and a daughter, and leaving a will and
a codicil, by the terms of which she gave all the estate over which she
had a power of appointment to three trustees named in trust, to pay
one-half the income to each child during life.   The son was empowered
"as to his share," and also in case of the death of the daughter "with-
out leaving a child or children living at her death," as to her share to
appoint by will the remainder to such "child, children, descendant and
descendants of him, and in such proportions and for such estate" as he
should "name, limit and appoint."   In default of such an appointment
by the son, E. gave his half and the other half, in case of the death of
the daughter without leaving a child or descendant living at her death,
to his "children and descendants, *per stirpes,* who are living at his death."
The son of E. died without having executed his power of appointment.
In an action for the construction of the will, and to determine as to the

validity of the appointment by E., *held*, that, conceding the words "descendant or descendants," as used in the clause of the will of O'D. creating the power, referred simply to the issue of a deceased person, and so, did not include the children of E.'s son while he was living, yet that the appointment made by her was strictly within the power; that the power was not limited to the creation of vested estates.

The law of Maryland allows the suspension of the power of alienation of an estate during lives in being at the creation of the estate, and twenty-one years and a fraction beyond in case of minority. *Held*, that, testing the suspension in this case by the Maryland rule, the final vesting of the estate was not unlawfully postponed.

*Thomas* v. *Gregg* (76 Md. 169), distinguished.

Also, *held*, that regarding the selection of new trustees by E. as unauthorized, this did not affect the validity of the appointment, as striking out the provision appointing them there remained a complete and perfect execution of the power.

Reported below, 67 Hun, 444.

(Argued December 13, 1894; decided January 15, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made February 17, 1893, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

This action was for the construction of the will of Columbus O'Donnell, in his lifetime a citizen and resident of Maryland, who died in 1873, leaving four children surviving him, including a daughter, Mrs. Emily Hillen, who died in 1888, leaving two children, Thomas Hillen and Emily McSherry, and to have an appointment made by Emily Hillen in her will, in attempted exercise of a power conferred upon her by the will of her father, Columbus O'Donnell, declared to be invalid, as not in conformity to this power.

Both of the children of Emily Hillen were living at the death of Columbus O'Donnell, and also at her death in 1888. Her son, Thomas Hillen, died about a month after the death of his mother, leaving surviving him his widow, the plaintiff in this action, and an infant son, the defendant Thomas O'Donnell Hillen, who was living at the death of his grandmother, Emily Hillen. The defendants Adrian Iselin, Jr., and Richard

M. McSherry are trustees under the appointment made by the will of Emily Hillen. The two former reside in the city of New York and have possession of the stock, bonds and securities which were transferred by the trustees and executors of the will of Columbus O'Donnell to them as trustees under the appointment in the will of Emily Hillen, and of the re-investments made from time to time. Thomas Hillen, the son of Emily Hillen, who, as stated, died after the death of his mother, left a will bequeathing and devising all his property to his wife, the plaintiff, without any appointment under the provisions of his mother's will, he claiming that the power of appointment conferred on Emily Hillen by the will of Columbus O'Donnell was never validly exercised by her, and that in consequence he took an absolute title on the death of Emily Hillen to one-half of the four-twentieth parts of the estate of Columbus O'Donnell, given to Emily Hillen for life under the clause in his will providing for its disposition in default of an appointment by her. If the appointment was valid the infant son of Thomas Hillen took the two-twentieths under the appointment in the will of Emily Hillen. The controversy, therefore, is between the mother, claiming under the will of her husband, Thomas Hillen, and the son, claiming under the appointment of his grandmother.

Columbus O'Donnell in "item fifth" of the 16th article of his will devised four-twentieths of his residuary estate to Charles Oliver O'Donnell (his son), Adrian Iselin, C. Morton Stewart and Elliott O'Donnell Poor, the survivors and survivor, the heirs, executors and administrators of the survivor and their successors in trust during the life of his daughter Emily Hillen, to pay the net income to her for her sole and separate use, and the will then proceeds as follows: "And from and immediately after the death of my said daughter Emily, then the whole of the said last-mentioned four-twentieths parts or shares of the rest, residue and remainder of my estate aforesaid, or the property, stock or funds of all kinds in which the same may be invested at the time of my said daughter Emily's decease is to continue in further

trust, and to be held by the said trustees and their successors to and for such child or children of my said daughter Emily, or his, her or their descendant or descendants, and in such proportions and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as my said daughter Emily may by her last will and testament, or by any instrument of writing in the nature of a last will and testament, notwithstanding any coverture she may be under, executed in the presence of three or more witnesses, name, limit and appoint to take the same; and in case my said daughter Emily shall die without having executed under and in pursuance of the power above given to her any such will or instrument of writing in the nature of a will limiting and appointing the said four-twentieth parts or shares in manner aforesaid, then in default of such limitation and appointment by my said daughter Emily it is my will and I so declare and direct that from and immediately after the decease of my said daughter Emily the said trustees and their successors shall continue to have and to hold the said last-mentioned four-twentieth parts or shares of the said rest, residue and remainder of my estate as aforesaid, or the property, stock or funds of all kinds in which the same may be invested at the time of my said daughter Emily's decease, in trust for the uses and purposes following, that is to say : *First,* in case my said daughter Emily shall leave living at her death any child or children or any descendant or descendants of any child or children of hers who may have died in her lifetime, then in trust for any and every such child or children of my said daughter Emily, and any and every such descendant and descendants of any child of hers living at her death, their heirs, executors, administrators and assigns, if but one to take the whole, if more than one to be equally divided between them *per stirpes* and not *per capita*, and such descendant or descendants of any child to take only the part or share to which such child would have been entitled if then living; *secondly,* in case my said daughter Emily shall not leave living at her death, any child nor any descend-

ant of any child of hers, then and in that case the said trustees and their successors shall continue to hold the whole of the said last mentioned four-twentieth parts or shares of the said rest, residue and remainder of my estate as aforesaid, or the property, stock or funds of all kinds in which the same may be invested at the time of my said daughter Emily's decease in trust for the following uses and purposes, that is to say : In trust to and for such of my other children or their descendants or descendant, and in such proportions and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as my said daughter Emily may by her last will and testament, or by any instrument of writing in the nature of a last will and testament, notwithstanding any coverture she may be under, executed in the presence of three or more witnesses, name, direct, limit and appoint to take the same; *and thirdly*, in case my said daughter Emily shall die without having executed under and in pursuance of the power above given to her, any such will or instrument of writing in the nature of a will, limiting and appointing the said last-mentioned four-twentieth parts or shares in manner aforesaid, then in default of such limitation and appointment by my said daughter Emily, and in the event also of her dying without leaving any child or any descendant of any child of hers living at the time of her death as aforesaid, it is my will and I so declare and direct, that from and immediately after the decease of my said daughter Emily, the said trustees and their successors shall have and hold all the said last-mentioned four-twentieth parts or shares of all the said rest, residue and remainder of my estate as aforesaid, or the property, stock or funds of all kinds in which the same may be invested at the time of my said daughter Emily's decease, to and for all my other children then living, and all the descendant or descendants then living of such of them as may be then dead, their heirs, executors, administrators and assigns, if but one to take all, if more than one to be equally divided between them *per stirpes* and not *per capita.*"

The appointment in the will of Mrs. Emily Hillen is in these words :

" 3. I give all the rest of my estate of every kind, including herein all the estate over which I have a power of appointment under my father's will, to Adrian Iselin, of the city of New York, and Richard Fisher, of the city of Baltimore, and the survivor of them, and the heirs, executors, administrators and assigns of such survivor, in trust to collect the rents, issues and profits thereof and pay all necessary expenses thereout, including a commission of two and one-half per cent to said trustees on the income, and to pay one-half part of the net income to my said son for and during the term of his natural life, and the other part to my daughter for and during the term of her natural life, without the power to my said son or daughter to contract any debt that may bind either the principal or the said income or to make any assignment thereof, or in any manner to draw upon or anticipate the same, and so that the same shall not be in any manner liable for his or her debts, contracts or engagements, and shall be paid to him or her alone, and as fast only as it shall be received, and so that the share of my daughter shall be free from the power or control of her husband for her sole use.

" 4. I empower my son as to his share, that is to say, one-half part of said rest of the estates, and also as to the other half part also in case of the death of my daughter without leaving a child or descendant living at her death as hereinafter mentioned (and such power as to said other half may be exercised whether he survive her or not), to appoint the remainder to and for such one or more child, children, descendant and descendants of him, and in such proportion and for such estate and estates therein, either in fee or for a less estate, and with such limitations and conditions as my said son, by his last will and testament, name, limit and appoint.

" 5. And upon default in the exercise of such power by my said son, I give at his death his share, that is to say, one-half part of said rest of the estates, and the other half part also, in case of the death of my said daughter without leaving a child

or descendant living at her death as hereinafter mentioned, to all the children and descendants of my said son, *per stirpes,* who are living at his death, free from further trust."

The 5th codicil to Mrs. Emily Hillen's will contains the following clause : " I revoke all the appointments in said will and the codicils thereto of both trustees and executors, and I appoint Adrian Iselin and Adrian Iselin, Junior, of the city of New York, and my son-in-law, Richard M. McSherry, trustees under my said ——— and codicils for the trust purposes severally mentioned in them, and I appoint said Adrian Iselin, Junior, and my son-in-law, Richard M. McSherry, and Edward Otis Hinkley, executors of my said will and codicils."

The trustees under Columbus O'Donnell's will, who, at the time of the death of Mrs. Emily Hillen, were in possession of the estate, transferred the securities, in which much the larger part of Thomas Hillen's moiety was invested, to the trustees appointed by Mrs. Emily Hillen's will, who also were put in possession of the residue of the same moiety, consisting of property in Maryland.

The object of the action was to obtain a decree ordering the trustee so in possession of the property to deliver it to the plaintiff, who claims it as executrix and legatee of Thomas Hillen.

The appointment made by Mrs. Emily Hillen of her son's share of the four-twentieths of the residuary estate of General O'Donnell, devised in the fifth " item " of the 16th article of his will, is claimed to be void on four several grounds : *First.* That children of a living child of Emily Hillen were not objects of the power created by her father, Columbus O'Donnell. *Second.* Because the will of Columbus O'Donnell contemplates and requires that all estates created under the power should become vested immediately upon the death of Emily Hillen; whereas by the terms of her appointment the estate in remainder after the death of Thomas Hillen could not vest until his death. *Third.* That the attempted appointment was a departure from the power, in that it gave the estate to trustees other than those named by the creator of the power,

and upon trusts other than those authorized by him.  *Fourth.*
That the limitation in the will of Emily Hillen was void under
the rule against perpetuities.

The Special and General Terms decided and held that the
appointment made by Mrs. Hillen in her will was authorized
by the power conferred by the will of Columbus O'Donnell,
and that on the death of Thomas Hillen, in default of any
appointment by him under his mother's will, the two-twen-
tieth parts of the estate passed under the appointment of Mrs.
Hillen to her grandson, Thomas O'Donnell Hillen.

From the judgment of affirmance by the General Term
the plaintiff appeals to this court.

*James C. Carter* and *A. W. Machen* for appellants.  The
children of a child of Emily Hillen were not objects of the
power, if their parent was alive at the death of Emily Hillen.
(*Thomas* v. *Levering,* 73 Md. 451;  *Penny* v. *Turner,* 15
Sim. 371;  *Best* v. *Stonehewer,* 34 Beav. 70;  *Wickersham* v.
*Savage,* 58 Penn. St. 365;  *Price* v. *Lockley,* 6 Beav. 180;
*Woodruff* v. *James,* 115 N. Y. 346;  *Griffiths* v. *Gale,* 12
Sim. 354.)   Interpreting the will of Columbus O'Donnell as
including among the possible objects of the power given to
Emily Hillen, her issue of any generation living at her death,
still her appointment is not a good exercise of that power.
(*Routledge* v. *Dorril,* 2 Ves. Sen. 363;  *Smith* v. *Smith,* L.
R. [5 Ch.] 342;  *Hale* v. *Hale,* 3 id. 643;  *Blight* v. *Hartnoll,*
19 id. 294;  *Pearks* v. *Mosely,* L. R. [5 App. Cas.] 714;
*Myers* v. *S. D. & T. Co.,* 73 Md. 413.)   The appointment is
a departure from the power in devising the property to trus-
tees, and trustees of Mrs. Emily Hillen's own selection —
different from the trustees under her father's will, and upon
trusts, and with powers, which his will did not authorize her
to declare or give.  (*Myers* v. *S. D. & T. Co.,* 73 Md. 413;
*Wickersham* v. *Savage,* 58 Penn. St. 368;  *Horwitz* v. *Norris,*
49 id. 217.)   The power in Columbus O'Donnell's will,
according to the construction of it claimed by the appellees,
offends against the rule against perpetuities, especially as it is

applied in Maryland.   (*Thomas* v. *Gregg*, 76 Md. 159 ; *Golds-borough* v. *Martin*, 41 id. 488 ; *Deford* v. *Deford*, 36 id. 175 ; *Barnum* v. *Barnum*, 26 id. 119.)

*Joseph H. Choate, Richard M. McSherry* and *Wm. V. Rowe* for respondent.   The infant defendant, Thomas O'Donnell Hillen, the son of Thomas Hillen, is certainly a descendant of his father, and, as such, one of the objects of the power conferred by Columbus O'Donnell upon Emily Hillen.   In the exercise of that power she has not given to Thomas Hillen and to his children, so that his children share with their parent in his lifetime (although this would have been justified by the power), but has given to the children only upon the death of their father.   (*Drake* v. *Drake*, 134 N. Y. 220 ; 56 Hun, 590 ; *Ralph* v. *Carrick*, L. R. [11 Ch. Div.] 873 ; *Taylor* v. *Watson*, 35 Md. 520.)   The appointment is not invalid, either because infringing upon the rule against perpetuities or for any other reason.   (*Connor* v. *Waring*, 52 Md. 733 ; *Coggin's Appeal*, 24 Penn. St. 30 ; *Lawrence's Estate*, 136 id. 354.) The fact that Emily Hillen appointed trustees for the life of her son, who, by reason of the omission of C. Morton Stewart, were different from the trustees named in her father's will, was properly regarded by the learned judge below as a wholly immaterial consideration.   (*Ware* v. *Richardson*, 3 Md. 505 ; *Lawrence's Estate*, 136 Penn. St. 354, 367 ; *Busk* v. *Aldam*, 31 L. T. Rep. 370 ; *Crozier* v. *Crozier*, 5 Ir. Eq. 540 ; *Limbard* v. *Grote*, 1 Myl. & K. 1 ; *Thornton* v. *Bright*, 2 Myl. & Cr. 230 ; *Trollope* v. *Linton*, 1 Sim. & Stu. 477 ; Farwell on Powers, 151, 152 ; *Beardsley* v. *Hotchkiss*, 96 N. Y. 201, 218, 219.)

ANDREWS, Ch. J.   The validity of the appointment made by Emily Hillen depends upon the true construction of the power of appointment conferred upon her by the will of Columbus O'Donnell.   The donee of a special power to appoint an estate, given by deed or will, is invested with an authority merely, and unless the appointment conforms to the authority given,

the appointment is invalid, in so far, at least, as it transcends the power. The validity of an act in execution of a power is determined by the principles of agency. The appellant claims that the appointment made by the will of Emily Hillen was not authorized by the instrument creating the power. If this claim is well founded the situation in legal effect is the same as if no attempt to exercise the power had been made, and the estate to which it related passed upon her death to her children, Thomas and Emily, absolutely, by force of the alternative gift in the will of Columbus O'Donnell, to take effect in the event that the power of appointment given to his daughter should not be exercised. The primary question, therefore, in this case requires a comparison between the power granted and the appointment made, and upon the result of such a comparison the case must turn. The *cy-pres* doctrine of the English courts, which has been applied to the construction of appointments of real estate under powers contained in wills (note to *Alexander* v. *Alexander*, Tud. L. C. on Real Prop. 299), does not prevail in this state, nor as is said, in Maryland, and cannot be resorted to to help out a defective execution of a power in a matter of substance.

The main ground of assault upon the validity of the appointment of the remainder by the will of Emily Hillen to the child or children of her son Thomas, is that such child or children were not at the death of his mother, descendant or descendants in a legal sense of their father, who was then living, and were not, therefore, objects of the power under the will of Columbus O'Donnell, which authorized an appointment to the "child or children of my (his) daughter Emily, or his, her or their descendant or descendants." The learned counsel for the appellant has shown that the word "descendant," according to its accurate lexicographical and legal meaning, designates the issue of a deceased person, and does not describe the child of a parent who is still living. The word is the correlative of ancestor. The word issue is a word of broader import and may include the children of a living parent as well as the children or descendants of one who is dead. But

in an accurate sense one cannot have a living ancestor, nor can a living person, although he may have children, have descendants. But it was conceded, and it is an obvious truth, that a testator may not use a descriptive word in its literal signification, and that.if in construing a will it appears from the context that he used a particular word in a broader or different sense than would attach to it unexplained, that sense is to be attributed to it which was intended by the author of the instrument. In view of this principle the learned counsel further contended that there was nothing in the context of the will or in the circumstances surrounding the situation, which qualified or enlarged the strict meaning of the word "descendant" used by the creator of the power. The learned counsel for the respondents, while not controverting the proposition that the word descendant, in legal definition, means a child or children of a deceased person who was the *stirps* or stock of descent, nevertheless contended that the word as used by the testator, Columbus O'Donnell, in creating the power was intended to embrace all the persons in the line of descent from any child or children of Emily Hillen; that is to say, as well the children living of a son or daughter of Emily, during the lifetime of the parent, as the issue of such son or daughter, the parent being dead. In support of this contention reference was made to the broad discretion reposed in Emily Hillen, the right of selection of the objects of appointment, and to exclude any child from the benefit of the power, and appoint the whole estate to one child to the exclusion of the other, or to the descendants of such child, the right to limit the estates to be created to a fee or a less estate in her discretion, implying a right to create successive estates for life or years, with remainders; and what was claimed to be more decisive still is the fact that the testator, in the clauses which dispose of the remainders in the shares given to his children for life, in default of appointment, used the words "descendant or descendants" in connection with express restrictive words, confining their application in terms to children or issue of deceased parents, and from this fact the inference is

sought to be drawn that in the clauses creating the power of appointment he used the words in a larger and unconfined sense, because he there omitted the restrictive words, which he seemed to regard as necessary in order to confine their meaning in creating the devises over. The Special and General Terms sustained the appointment made by the will of Emily Hillen, upon the contention of the defendants that the words "descendant or descendants," in the clauses creating the power, were used in a wider sense than the strictly legal one, and that the testator in creating the power in question meant to include in one class Emily's children living at her death, and all their children and their issue, whether such children were living or not, and to vest in the mother a discretion to select any one or more of this class, and to bestow the property on one or all, as she might determine.

. We think the present judgment may be affirmed without passing upon this question, which is certainly not free from difficulty. Conceding the claim of the appellant, that the words "descendant or descendants" used in the clause of Columbus O'Donnell's will creating the power of appointment in Emily Hillen were used in their primary sense, and that the appointment to the issue of her son to be valid must have been made to issue of the son, who stood in the legal character of his descendants, nevertheless, the appointment of the remainder was in our judgment strictly within the terms of the power. The power was to appoint to the child or children of the son, or to his "descendant or descendants." The donee of the power appointed the estate to the son for life, and at his death, in default of appointment by him (which was never made), she appointed the remainder to his "children and descendants, *per stirpes*, who are living at his death." The remainder was contingent. (*Purdy* v. *Hayt*, 92 N. Y. 446.) The persons entitled to take in remainder could not be ascertained until the death of the son. No estate vested in Thomas O'Donnell Hillen, the son of Thomas Hillen, on the death of his grandmother. He might die before his father, and the remainder was to child or children living at his death.

But the death of Thomas Hillen, the father, would at the same moment terminate his life estate and also ascertain the descendants entitled to the fee under the appointment. The gift of the remainder was by necessary construction a gift to the descendants of Thomas Hillen, because the remainder was dependent upon his estate for life, and no person except his descendants in their character as such could take it, and until his death no estate could vest in interest in any child or children of the life tenant. It would be a very unreasonable construction of the power that an appointment of a future estate could only be made to issue of the testator's son or daughter, who should have the character of descendants at the death of the donee of the power. She was given the fullest latitude in respect to the character and quality of the estates she might create, intermediate the vesting of the fee. It is plain that the grantor of the power contemplated the probable creation of life estates and remainders. All he required was that the property should go to those of his blood, the children or descendants of his son, his daughter, her children, or one of them and their descendants, and this purpose was fulfilled by the appointment to the son of Emily Hillen and to his descendants upon his death. It seems to us plain that the appointment made by Emily Hillen was strictly within the power, giving to the words " descendant or descendants " their primary signification.

The claim that under the power the testator's daughter Emily could create only vested estates is not supported by any language in the clauses creating the power, nor, as we think, by any intention deducible from the language used, and seems to be inconsistent with the broad discretion conferred on the donee of the power to prescribe what estates her appointees should take. The fact that the testator, by the gift over in default of appointment, gave the property absolutely on the termination of the life estate to Emily's children or descendants, if any, or, in the alternative, to his other children or their descendants, does not indicate that the estates authorized to be created under the power were to be of the same absolute character.

If this was his intention he presumably would have so declared. But he confided to his daughter a discretion to be exercised in view of events and circumstances which he could not know or foresee. It is undoubtedly true that the testator did not contemplate any lapse by which his estate or any part thereof would remain undisposed of. But even under his will there might be no effectual gift of the remainders in the event of Emily's dying without having exercised the power of appointment. But this was a very improbable contingency, and equally so under the appointment made by Emily.

The further claim is made that the appointment under the will of Emily Hillen is invalid as offending against the rule against perpetuities. It is well settled that the time of the suspension of the power of alienation, where appointments of future estates have been made under a power, which are claimed to be invalid for remoteness, is to be measured from the death of the testator, or, in the case of deeds, from the time of the conveyance. For the purpose of determining whether there has been an unlawful suspension of the estates created under a power, they are considered as having been created when the will or deed took effect. The law of Maryland, following the English rule, allows a suspension during lives in being at the creation of the estate, and twenty-one years and a fraction beyond in case of minority. Testing the suspension in this case by this rule, the final vesting of the estate was not unlawfully postponed. There intervened between the death of the testator, Columbus O'Donnell, and the death of Thomas Hillen, the son of Emily, but two life estates, namely, an estate for life in Emily under her father's will, and, second, a life estate in her son, Thomas Hillen, under her appointment, and both life tenants were living at the death of Columbus O'Donnell. Upon the death of the son the estate, under the appointment, was to vest absolutely in his descendants then living. These limitations were clearly authorized. It is no objection that the remainder was limited in favor of persons not in being when the limitation was created, provided that the contingency upon which the final

vesting depends must happen, and the persons entitled to take
be ascertained within the permitted period. (*Purdy* v. *Hayt,
supra.*) We have assumed that the title to the property was
vested in the trustees during the continuance of the life estates,
and was inalienable during their continuance. In this state
trust estates are inalienable by force of statute, although there
is nothing in the nature of such an estate which makes them
inalienable *ipso facto.* (*Robert* v. *Corning,* 89 N. Y. 226.)
We are referred to the case of *Thomas* v. *Gregg* (76 Md. 169)
as an authority for the contention that there was in this case
an unlawful suspension. The distinction is in the application
of the rule that limitations are void which may unduly sus
pend the power of alienation, although it may turn out that
by reason of the falling in of the contingencies within the
prescribed period there may be no such suspension in fact.
In *Thomas* v. *Gregg* a testator created a trust for the life of
his daughter, with power to her to appoint to her children or
grandchildren. The daughter appointed the estate in trust
for the life of her " children now living, or that may here-
after be born to me," and afterwards died, leaving three
children, two of whom were living at the death of the tes-
tator, and one of whom was born after his death. The court,
applying the rule that a limitation under a power of appoint-
ment must be construed as if it were inserted in the instrument
creating the power, held that the appointment violated the
rule of perpetuities, because it tied up the estate for the lives
of persons not in being at the death of the testator, namely,
the children then unborn of his daughter, and the court
declared that the circumstance whether a child should be born
or not after the testator's death would make no difference in
the construction of the limitation. It was sufficient, the court
said, that a child might be born thereafter who would be enti-
tled under the appointment. This case proceeds on an intel-
ligible principle, that there might be under the will (construing
the appointment a part of it) a possible suspension of the
period of alienation beyond lives in being at the death of the
testator. The principle to which we have adverted, that the

validity of a limitation is to be tested by what is possible, and not by what in fact happens, has no application in reason to the construction of a power to limit estates couched in general terms, without negative or restrictive words. It applies to estates actually limited under a will, deed or power, and a general and unlimited power of appointment to be exercised in the future is not void because under it the donee might, without departing from the express language, attempt to create an illegal estate. The power is in legal effect a power to do what is lawful and not what is unlawful. We think the estates under the power of appointment in this case were legally limited in point of duration.

The final objection is that the donee of the power nominated trustees of her own selection to hold the estate during the life of her son, thereby, as is said, disregarding the purpose of the testator, that the trustees named by him should hold the estate until the final vesting in fee. In fact, the trustees named by the daughter were, with one exception, the trustees under the will of her father. The answer of the General Term to this point is, we think, conclusive. If the appointment of new and different trustees were authorized, this departure from the power may be disregarded without affecting the beneficial interests of the appointee under the appointment. The case comes within the principle that the execution of a power will not be defeated because of some provision in excess of the power, which may be eliminated without disturbing the general scheme. (See *Alexander v. Alexander*, 2 Ves. Sr. 644.) Regarding the appointment of new trustees as unauthorized, and striking out the provision appointing them, there remains a complete and perfect execution of the power.

We think the judgment is correct, and should, therefore, be affirmed, with costs.

All concur, except HAIGHT, J., not sitting.

Judgment affirmed.