WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr., by appointment of the Orphans' Court of the State of Delaware, in and for New Castle County,

Complainant,

THE MARINE TRUST COMPANY OF BUFFALO, a corporation of the State of New York, and CARROLL E. DONNER, now Lady Carroll Tennyson, Executors Under the Last Will and Testament of Joseph W. Donner, Deceased,

Intervening Complainant,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Succeeding Trustee Under a Certain Trust Agreement dated November 20, 1920,

Defendant.

*New Castle, May 22, 1936.*

*William H. Foulk,* of the firm of Satterthwaite & Foulk, for complainant, Wilmington Trust Company, Guardian for Joseph W. Donner, Jr., and Carroll E. Donner, Jr.

*Paul Leahy,* of the firm of Ward & Gray, of Wilmington, and *D. J. Kenefick,* of the firm of Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., for intervening complainants, the executors under the will of Joseph W. Donner, deceased.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR: The case as now supplemented by the stipulation showing the New York statutes is a new one. In the opinion heretofore filed it was concluded that the equitable life interests in the children of Joseph W. Donner were not invalid either because of remoteness as to themselves or because they were a component and inseparable part of a general scheme of tying up the appointive estate beyond the period permitted by the rule against perpetuities. At the end of the discussion of that point, I used this language—"I shall not examine any questions concerning any features that may attach to those interests which the language creating them may suggest as not permissible, but which have not been raised."

That sentence appears to have provoked a motion for re-argument which became enlarged into a motion for a re-hearing.

What I had in mind when the above quoted sentence was written was the question of whether the spendthrift trust features attaching to the equitable life interests in the children of Joseph W. Donner were valid under the law of this State. The solicitor for the guardian now presses the point on the re-hearing, contending first, that the trust is not in fact a spendthrift one, and second, if it is, it is in violation of the law of Delaware.

Upon reflection it is not necessary to engage in an examination of the questions thus raised, for the only pertinency which they can have to the problem in hand is whether the alleged spendthrift character of the trust does not evidence a clear and unmistakable intent on the donee's part that the life estate appointed by him should remain intact and not become obliterated by a coalescing with remainders. Though one of the purposes in an instrument may be legally forbidden, yet the language which expresses it loses none of its significance as an expression of intent.

*Wilmington Trust Co. v. Houlehan, et al.,* 15 *Del. Ch.* 84, 91, 131 *A.* 521; *Tilden v. Green,* 130 *N. Y.* 29, 55, 28 *N. E.* 880, 14 *L. R. A.* 33, 41, 27 *Am. St. Rep.* 487. Therefore if it be assumed, as the solicitor for the guardian contends, that the provisions against alienation and anticipation of the income by the life beneficiaries and the exemption of it from execution, do not show a spendthrift trust, or, showing it, that such a trust is invalid under Delaware law, the force of the language expressing such assumed purpose remains unimpaired as a revelation of intent. Those provisions can be of interest only to creditors and assignees. The provisions referred to are clear in the intent that the creator of the life interests intended that not only the safety of the corpus of the trust should be free from the hazards of loss through the individual management of the life beneficiaries, but as well that the life beneficiaries should themselves be protected from their own possible improvidence. The interposition of a trustee was thus intended for something more than the protection of remainders. In such case, as stated in the former opinion, the doctrine of coalescing is not applicable.

At the re-hearing, other and more serious questions were raised and argued at length by the solicitors representing the intervening complainants. On the former hearing, the question of whether the power of appointment had been properly exercised by Joseph W. Donner was answered in the light of the Delaware law and it was concluded that it had been so exercised by the instrument of October 9, 1929, up to the termination of the life estates in the children of Joseph W. Donner.

But it is now contended that whether the power was properly exercised, is to be determined not by the Delaware law but by the law of New York. The pertinent provisions of the New York statutes together with decisions of the New York courts construing the same have been made a part of the record in the cause. Only one of the statutes was before the court on the former occasion—the one

providing that a general provision in a will purporting to pass all the personal property of the testator shall pass personal property embraced in a power to bequeath, unless a contrary intent appears in the will. *N. Y. Personal Property Law, (Consol. Laws, c. 41)*, § 18. That provision was eliminated from view in the former opinion because it was held that, even if it were conceded to be otherwise applicable, it could not be so here inasmuch as the power had already been exhausted by its exercise through the instrument of October 9, 1929.

Now, however, the effectiveness of the instrument of October 9, 1929, as an exercise of the power, which was sustained under the law of Delaware, is attacked on a new ground, *viz.*, that it must answer the test of the New York rather than the Delaware law and that under the New York law it is invalid. It is unnecessary to quote all the New York statutes which have been placed in evidence. It is sufficient to say that if the validity of the instrument of October 9, 1929, is to be determined in light of the New York statutes, it cannot be sustained. The period during which the absolute right of alienation may be suspended under the law of that State is to be computed from the time of the creation of the power (*Genet, et al., v. Hunt, et al.,* 113 *N. Y.* 158, 170, 21 *N. E.* 91; *Hillen v. Iselin,* 144 *N. Y.* 365, 39 *N. E.* 368); and § 11 of the *Personal Property Law* limits the period of suspension of the absolute ownership of personal property not longer than two lives in being at the date of the instrument creating the limitation. These provisions are to be construed together and being so construed they denounce as void the limitations in trust for the lives of the children of Joseph W. Donner who were not in being at the time when the deed of William H. Donner, which created the power, became operative. *Fargo v. Squires,* 154 *N. Y.* 250, 48 *N. E.* 509; *Cheever v. Cheever,* 172 *App. Div.* 353, 157 *N. Y. S.* 428.

I do not understand it to be disputed that if the validity of the life estates of the children of Joseph W. Donner is

to be tested by the New York law, they cannot be sustained as valid.

This brings me, then, to consider whether the law of New York or that of Delaware supplies the governing rule. If the latter governs, the life interests are good, as heretofore decided; if the former governs, the life interests are void.

It is well settled that whether a testamentary power has been executed with respect to personal property is to be determined by the law of the domicile of the testator by whom the power was created. *Lane v. Lane*, 4 *Pennewill*, 368, 55 *A.* 184, 64 *L. R. A.* 849, 103 *Am. St. Rep.* 122, decided by the Supreme Court of this State in 1903. Here, however, we are not concerned with the fact of execution of the power as in *Lane v. Lane*, but rather with the legality of its operation, that is to say, with whether the interests sought to be created by an exercise of the power are such as the law will recognize. The maxim of *mobilia sequuntur personam* requires, as a general rule, that the validity of a testamentary trust of personal property should be tested by the law of the testator's domicile. See *Conf. Laws, A. L. I.* §§ 295, 306. Since, in the absence of statutory law to the contrary, the execution of a power is regarded as the act of the donor done through the appointee as his agent, it follows that the interests created by the appointment are to be regarded as having been created by the donor; and that where the power is of testamentary creation and personal property is the subject of its operation, the validity of the trusts appointed thereunder should therefore be tested under the general rule just stated, *viz.*, by the law of the testator's domicile. The general rule referred to, however, is not one of invariable application. For instance in *Chamberlain v. Chamberlain*, 43 *N. Y.* 424; *Hope v. Brewer*, 136 *N. Y.* 126, 32 *N. E.* 558, 18 *L. R. A.* 458; *Robb v. Washington & Jefferson College*, 185 *N. Y.* 485, 78 *N. E.* 359; *Vansant v. Roberts*, 3 *Md.* 119; and in *Fordyce v. Bridges*, 2 *Phil. Ch.* 497, a

bequest to a non-resident of personal property in trust to be held and administered in a foreign state, if it does not offend against the public policy of the state where the property is to be held and the trust is to be administered, was sustained as valid by the courts of the testator's domicile notwithstanding by the law of the domicile the trust would be struck down as in violation of that state's public policy. This result rests on the principle that since such questions of public policy as are embodied in the rule against perpetuities and in the mortmain statutes can be of legitimate interest only as to property intended to be held in the particular state where the public policy prevails, it becomes a matter of no concern to that state if public policy in another jurisdiction permits property to be received and held under more liberal regulations than in the former. This view, though not without some authority against it, nevertheless appears to me to be founded in reason and therefore sustainable in principle.

The instant case is not one which is concerned with a testamentary trust and power. Such a case stands on a footing peculiar to itself. Cases dealing with powers having a testamentary origin are for that reason to be differentiated from cases which involve powers originating in agreements *inter vivos,* when a question involving conflict of laws is presented. In an agreement *inter vivos* the element of domicile lacks the importance which practical considerations have accorded it in the law of wills. There is more room for the play of intent. I can see no reason why the intent of a donor should not be allowed full play in the matter of selecting the jurisdiction under which the validity of a trust *inter vivos* is in all respects to be determined, provided of course the property composing the corpus be delivered to a trustee in the selected jurisdiction and there administered. Indeed even in a trust of testamentary creation it has been held, that intent is to be indulged to that extent. Such, in necessary effect, is the purport of the cases just referred to, though the opinions in those cases did not

expressly rest the decision upon intent as the controlling factor. If it be suggested that to permit a person to subject his personal property to the laws of a jurisdiction other than that of his domicile would be in substance to allow him the selective power of legislation with respect to his own affairs, it is a sufficient answer to say that there is nothing in the concept of domicile that entitles it so rigidly to fix a man in the caste of a local status that he can in no case whatever subject his personal property to rules that lie outside the restrictions of that caste. Suppose a person domiciled in New York should travel by train to Delaware, carrying with him a sum in cash, and in Delaware deposit his money with a Delaware resident under a specified trust to be there held and administered, and should then return to the state of his domicile, it would seem out of all reason to say that the law of New York rather than that of Delaware should govern the validity of the trust. If it were not so, domicile would become a straitjacket. There can be no reason in refusing to permit him to remain on New York soil for the perfecting of arrangements which he might by a short railroad journey accomplish with efficacy.

In the instant case, then, the question of what law is to determine the legality of the interests undertaken to be created by the power which Joseph W. Donner assumed to exercise, whether the law of New York or the law of Delaware, is to be answered in the light of the intent of the donor of the power.

The intent was not expressed in the instrument which declared the trust and created the power. It is to be gathered from the facts and circumstances. Now those facts and circumstances are that the donor, when the trust and power were created, was domiciled in New York, the trustee was domiciled there, as were all the beneficiaries, the securities were located there, and the delivery of them to the trustee was effected there. Certainly, then, at the time the trust was created, it was subject to New York

law and it can hardly be doubted that the donor at that time must have regarded the rules of the New York law as applicable to the trust he created. By every test to be applied, that of the domicile of the donor, the domicile of the trustee, the location of the trust *res,* the delivery thereof to the trustee under the terms of the trust, and, if it is of any importance as in my judgment it is not, the domicile of all the beneficiaries in being, the conclusion must follow that in its inception this trust was intended to be a trust under the law of New York. It was subject to the law of that jurisdiction in all respects and must be considered as having been so intended by the donor.

In *Mercer v. Buchanan,* (*C. C.*) 132 *F.* 501, the trustor was a resident of New York; the three trustees were citizens and residents of Pennsylvania; the deed of trust was executed, acknowledged, delivered and accepted by the trustees in New York, and the securities, which were stocks in corporations of several states, were delivered to the trustees in New York. The court held that the trust was governed by the law of New York. That the trustees were residents of Pennsylvania and that their duties were to be performed in any particular state was said by the court not to make the trust a Pennsylvania one as distinguished from New York. The deed with its setting of facts above detailed, gave the trust its status. The instant case is even stronger, for here not only was the deed executed and delivered in New York by a New York resident and delivery of the property to the trustee there made, but, as the trustee named in the deed was a resident of New York, it must be considered that until a change of trustee was made the duties of the trustee should be performed in that State. 2 *Beale, Conflict of Laws,* § 197.

After the Wilmington Trust Company became the successor-trustee, the donor while continuing a resident of New York deposited additional securities with the trustee to be held under the terms of the trust. It is argued from the circumstance that the additional deposits were made

with the trustee in Delaware, that it must be concluded that at least as to those deposits the law of Delaware governs the trust in all respects. This contention is not acceptable for the reason principally that the trust as originally created in 1920 was uniform in the application of its provisions to all the property then or thereafter to be deposited under it. To accept the contention referred to would be to break this uniformity of application. Part of the property would be subject to one set of rules governing its disposition and part to another. Not only is there nothing in the instrument creating the trust which gives countenance to that conception, but every indication of the instrument is to the contrary.

But even if it be granted that the trust at its creation was governed by New York law, yet, it is argued, as the instrument of trust permitted a majority of the adult beneficiaries, with the approval of the donor during his lifetime, to change the trustee from time to time by designating any trust company of certain defined qualifications in any other state to act as trustee, and as the parties in strict pursuance of the terms of the trust did select the Wilmington Trust Company which is located in this state as the substitute trustee and as the securities held in the trust were delivered to it in Delaware where they have ever since been and are now held and administered, it must be considered that the validity of the trust is no longer to be tested by the New York law. The question of validity, it is said, is now to be tested by the Delaware law.

This argument amounts to saying that the intent of the donor when he created the trust was subject to fluctuation, and rested at no time upon a permanent base. If by changing the applicable law the meaning of the instrument could be altered, the result is that in effect the trust was made subject to new terms. The instrument reserves a power in the donor to modify the trust by enlarging and extending but not by limiting the rights and privileges of his children granted thereunder. The donor, however, never

executed any instrument of modification. He did approve of the change of the trustee. It is from this act of approval alone that it is sought to deduce a modification of the trust by the donor, the modification, if any, being effectuated through the governing effect of Delaware law as opposed to the law of New York. The deed of trust provides that the donor may effect modifications by "a written instrument or instruments supplemental hereto filed with the trustee." To construe the donor's approval of a change of the person of the trustee as a modification of the terms of the trust, is to elevate that rather informal though important act to the dignity of an "instrument" as contemplated by the deed of trust. It would seem that if the donor had intended to modify the terms of a solemn deed of trust, he would have done so by an "instrument" directly framed for that purpose. A mere written sentence of approval of a change of trustee, appended at the end of a paper signed by the adult beneficiaries, cannot be considered as possessing the character of an instrument of modification. It borrows its nature from the obvious character of its purpose which was simply to change the person of the trustee, and is referable to that article of the trust instrument which deals with that subject. It does not purport, either on its face or in its design, to relate to the power of modification reserved by the donor in another article of the deed.

A change of domicile by the trustee which is accompanied by a change of the location of the trust property itself does not change the status of the trust. *Swetland v. Swetland,* 105 *N. J. Eq.* 608, 149 *A.* 50. Had the original trustee removed to Delaware bringing the trust *res* with her and there continued to administer the trust, it can hardly be denied that the New York law would have continued to govern its terms. In substance all we have here is the appointment of a new trustee by the beneficiaries with the approval of the living settlor and a removal of the trustee to Delaware with like approval. It is difficult to see anything in that fact which looks to a fundamental

change in the terms and conditions of the trust. The provision in the trust instrument that "the successor trustee shall hold the said trust estate subject to all the conditions herein, *to the same effect as though named herein*," does not alter my view of the significance of the clause providing for a further possible trustee in another state. The italicized phrase is referable to the conditions as stated and existing at the time the trust was created.

If the parties, by choosing a Delaware trustee can subject the governing intent to Delaware law for its ascertainment as opposed to its ascertainment under New York law to which it was originally subject, it follows that by a later shift of the administration back to New York, the old intent would be reinstated; and if later the person of the trustee should be changed to successive trust companies located in several states respectively, the terms of the trust would vary with the migration of its administration according as the law of the state for the time being provided. The possibility of this situation is the less likely of acceptance as having been intended by the trustor when it is remembered that, though his assent to a change of the trustee to a trust company of any other state was necessary while he lived, after his death the adult beneficiaries were fully empowered to make the change in their absolute discretion. Thus, the beneficiaries themselves would be able, by selecting the jurisdiction of administration, to alter the terms of the trust in substantial respects.

It is hardly to be thought that the trustor intended consequences of so fundamental a character to flow from the mere circumstance that he provided that when a majority of the adult beneficiaries agreed that his wife, who was the trustee, should be removed from her office, a trust company in any state of the Union could be chosen to succeed her. It appears to me that that provision was designed solely in the interest of administration and was in no wise intended as a means of selecting what body of

law should govern the trust in its substantial and essential terms.

There is no irreconcilable difficulty in having the meaning and validity of a trust judged by the law of one jurisdiction and its administration governed by the law of another. Practical considerations render necessary the principle that no matter under what jurisdiction the validity of the trust is to be determined, problems concerning its management are referable to the jurisdiction where the seat of its administration is located. *First National Bank v. National Broadway Bank,* 156 *N. Y.* 459, 51 *N. E.* 398, 42 *L. R. A.* 139; *Mercer v. Buchanan,* (*C. C.*) 132 *F.* 501; *Swetland v. Swetland,* 105 *N. J. Eq.* 608, 149 *A.* 50; *A. L. I. Conf. of Laws,* § 297; *Beale, Conflict of Laws, vol.* 2, *p.* 1024. When a question of validity is stirred by a dispute over administration, the tribunal having authority to determine the administration must decide the question of validity according to the law of the foreign state whose law is applicable thereto.

Holding as I do that the law of New York governs the validity of the trusts created by the instrument of appointment which Joseph W. Donner executed, it is clear that under that law the interests assumed to be created by that instrument are invalid, as before stated.

What, then, is the result? The guardian of the children of Joseph W. Donner contends that the property allocated to the share which he enjoyed for life goes, for the want of a legal appointment under the instrument of October 9, 1929, to the children absolutely free and clear of all trusts, as is provided in the original settlement executed by their grandfather, William H. Donner. This position is well taken unless there is merit in the contention advanced by the executor under the will of Joseph W. Donner, that the residuary clause of the will executed the power conferred upon him.

Whether the will executed the power is to be determined

in the light of the New York statute. That statute is as follows:

"*Power to bequeath executed by general provision in will.* Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication." *Personal Property Law N. Y.* § 18.

This statute recognizes intent only in a negative way as a controlling factor upon the question of a power's execution. It declares that a general provision disposing of personal property shall pass such property embraced in a power, *unless* within the will itself there is evidence, express or implied, evidencing an intent to the contrary. Now, if we are allowed to look at the ineffectual deed of October 9, 1929, for ascertainment of intent, it is very clear that the donee of the power never intended his will to operate in execution of it. But, it is argued, we are not permitted to consult that deed for evidence of intent. This is for the reason, it is said, that the statute confines us to the will and what "appears therein," as the exclusive source of evidence of an intent contrary to the general rule of the statute.

The statute does not require that intent to execute the power shall affirmatively appear. The Court of Appeals of New York in *Lockwood v. Mildeberger*, 159 *N. Y.* 181, 53 *N. E.* 803, 805, reversing 5 *App. Div.* 459, 38 *N. Y. S.* 1107, in construing the statute said:

"It is not necessary, as we have seen, that she [testatrix] should have had an intent to execute it [power], for the statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property."

The same case observes that an intent negativing an exercise of the power must appear within the will. The statute so provides in express terms. See, also, *Speir v. Benvenuti*, 197 *N. Y. App. Div.* 209, 189 *N. Y. S.* 885. Upon reading the statute the question arose in my mind whether

the clause making the will the exclusive source of evidence cf a negativing intent, was designed for literal application in a case where the power was exercisable by deed as well as by will. It occurred to me that in such a case, as a deed of execution was of equal dignity under the instrument creating the power as a will, it might well be that the deed might be consulted for evidence of a negative intent. The basis of this thought was that the statute was framed in contemplation of a case where a will is made the exclusive method of execution.

But the decision of the New York courts in the case of *McLean v. McLean*, (*Sup.*) 158 *N. Y. S.* 59, affirmed 174 *App. Div.* 152, 160 *N. Y. S.* 949, affirmed 223 *N. Y.* 695, 119 *N. E.* 1056, renders the query thus raised in my mind of no significance. This is for the reason that even if the instrument of October 9, 1929, be admitted as proper to be considered in construing the effect of the residuary clause of Joseph W. Donner's will as an execution of the power, it certainly can have no greater force and effect in that regard than it would have if its terms, instead of having been stated in a separate instrument, had been written into the will in which the residuary clause appears. Considering it, then, in its most favorable aspect as though it appeared in the will, the case above referred to which went to the Appellate Division and to the court of last resort in New York and was there affirmed, is clear in its holding that the force of the residuary clause as an execution of the power is in no wise overcome by any negativing intent which may be suggested as evidenced in the will itself by an attempted but invalid exercise of the power in a manner different in its disposition from that which is expressed in the residuary clause.

That case in its reasoning proceeds from the fundamental postulate laid down in *Lockwood v. Mildeberger, supra,* that under the New York statute the effect of a general residuary clause in relation to a power of appointment is to send the property which is the subject of the

power in the same direction as the testator's own property. It applies to property which the testator has ineffectually undertaken to dispose of in express execution of a power, the same rule that is applicable to any ineffectual disposition of the testator's own property, *viz.*, the rule, that as to such property, it falls into the catch-all of the residuary gift. The fact that the appointee had thought that he had effectually exercised the power, was held by the trial court in *McLean v. McLean, supra,* and by the two tribunals sitting in review not to be evidence of an intent that the general bequest was not to operate upon it.

This case which ran the full course of judicial examination up to the court of last resort, and which remains undisturbed by later decisions, settles the question so far as New York is concerned. Since New York law governs the question, as before stated, the decree here must be in conformity with the law of that state as it is herein found to be, notwithstanding the result might be different from what it would be if the question involved were answered in the light of the law of Delaware.

The power conferred on Joseph W. Donner was broad enough to dispose of the entire interest in that portion of the trust from which he received the income for life. His power as to three-fourths of the portion was however restricted as to the persons to whom he could appoint. His wife was not among these permissible appointees. As to the remaining one-fourth of said portion, however, the power in Joseph W. Donner to appoint was general and unrestricted. It was permissible, therefore, for Joseph W. Donner to appoint his wife as the recipient of one-fourth of the appointive interest either in its entirety or in part. From the circumstance that the residuary clause was not so worded as to confine the operation of it upon the appointive estate to a one-fourth interest therein to the wife, it is argued that we must infer that Joseph W. Donner did not intend that the clause should pass to her that interest. Put in another way, the argument is that because the

residuary clause of the will of Joseph W. Donner could not operate to pass the three-fourths interest in the appointive estate to his widow in view of her disqualification as an appointee thereof, we must infer that an intent is evidenced thereby that the clause was meant not to pass to her the one-fourth interest, as to which she was a qualified appointee. The argument overlooks the fact that the donor of the power had by express provision broken the appointive estate into two portions for the purposes of the power, *viz.*, into a portion containing three-fourths which was subject to a special power and another portion containing one-fourth which was subject to a general power. It was comparable to a situation where one piece of real estate is subject to a special power to appoint and another piece of real estate is made by the same instrument subject to a general power to appoint. It is difficult to see how, under the New York statute as it has been construed in that State, a general devise by the donee of the power in favor of one not qualified to take the property subject to the special power can be said to evidence an intent that the appointee should not take the other property which is the subject of the general power. In the instant connection, I can see no distinction in reason between the supposed case of two pieces of real estate subject to two different powers and the case *sub judice* where we have two fractional parts of a portion which had assigned to them by the donor of the power the character of separate and distinct entities. If the donor had not created the special power as to three-fourths but contented himself simply with the creation of the general power over the one-fourth, the residuary clause found in the donee's will would pass the one-fourth interest. *Lockwood v. Mildeberger, supra; McLean v. McLean, supra.* Because the donee of the power did not use language sufficient in law to dispose of the other three-fourths under the special power, does not evidence an intent that language otherwise amply effective to pass the one-fourth interest was not meant to do so.

The arguments on the briefs appear to consider the residuary clause in the will of Joseph W. Donner as attempting to appoint the three-fourths interest in favor of his wife. This is not a proper view to take. Since such a general clause operates as an execution of a power solely by virtue of the New York statute and since the widow is disqualified by the power itself to receive the three-fourths, it can in no sense be considered that the statute declares that the power as to that interest was attempted to be executed by the clause. As the statute fails to raise an intent on Joseph W. Donner's part to pass that interest, it cannot be said that Joseph W. Donner, whose intent is derivable from the statute, entertained an intent which the statute denies. But if it were otherwise, that is to say, if Joseph W. Donner did intend to execute the power as to the three-fourths interest in favor of his wife, the case would then be one where the donee of a power had made a disposition more extensive than was authorized by the power. In such a case the disposition would be invalid to the extent of its excessiveness and valid to the extent that it was within the embrace of the power. *New York Real Property Law* (*Consol. Laws, c.* 50), § 177; *Matter of Terwilligar's Will,* 135 *Misc.* 170, 237 *N. Y. S.* 390, affirmed, 230 *App. Div.* 763, 243 *N. Y. S.* 898; *Hillen v. Iselin,* 144 *N. Y.* 365, 39 *N. E.* 368. Assuming then that the residuary clause did undertake to make an invalid disposition to the donee's wife of an interest in three-fourths of the appointive estate, the disposition of an interest in the other one-fourth would stand as valid. The assumption, however, is for the reason just stated not tenable.

The conclusion is that as to a one-fourth interest in the portion of the trust whereof Joseph W. Donner enjoyed the income for life, the same passes under the residuary clause of his will. As to the other three-fourths, his attempt by the instrument of October 9, 1929, to appoint it in trust for his children for life remainder to their appointees or their lawful lineal descendants, etc., is void under the New

York law against perpetuities. The children of Joseph W. Donner, however, are entitled absolutely to the said three-fourths by virtue of the terms of the original trust created by their grandfather. By those terms, in view of the failure of their father to make an appointment, the children become absolutely entitled.

Decree in accordance with the foregoing.