ESTATE OF MABEL H. HOUGHTON, ARTHUR A. HOUGHTON, JR., AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF MABEL H. HOUGHTON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111236. Promulgated October 11, 1943.

*William Flannery, Esq.*, and *Charles L. Brayton, Esq.*, for the petitioner.

*Francis S. Gettle, Esq.*, for the respondent.

### OPINION.

ARUNDELL, *Judge:* This proceeding was initiated to test the correctness of respondent's determination of an estate tax deficiency in the amount of $19,282.61. An overpayment of $158.69 is alleged in the petition to have been made; and by amended answer the Commissioner

seeks to increase the deficiency by $34,189.13, or a total of $53,471.74. The case is concerned with five trusts, the primary issue being whether the transfers in trust were intended to take effect in possession or enjoyment at or after the grantor's death. All the facts pertinent to this issue have been stipulated. A subsidiary question is the proper amount to be included in gross estate if the Commissioner is successful on the first issue. The return was filed in the twenty-eighth district of New York at Buffalo, New York. We find the facts as stipulated.

Petitioner is the executor of the will of Mabel H. Houghton. hereinafter known as the decedent, who died a resident of New York on February 13, 1938.

On September 19, 1931, decedent executed and delivered a trust indenture by which she transferred 1,100 shares of the second preference stock of Corning Glass Works, a New York corporation, to Arthur A. Houghton, Jr., her son, and Corning Trust Co., in trust, for the purpose of creating four separate trusts. One trust, consisting of 150 shares of said stock, was to be maintained during the life of Emeline Hollister Park and the net income up to $600 a year was to be paid to her in equal monthly installments; the second, consisting of 150 shares, was to be maintained during the life of Grace Hollister Carman and the net income up to $600 a year was to be paid to her in equal monthly installments; the third, consisting of 300 shares. was to be maintained during the life of Anne Shirley and the net income up to $1,200 a year was to be paid to her in equal monthly installments: and the fourth, consisting of 500 shares, was to be maintained during the life of Mary Reeve Putnam-Cramer and the net income up to $2,100 a year was to be paid to her in equal monthly installments.

In each of the four trusts the following provision was made:

* * * and to pay each year the surplus income from said trust, in equal shares, to Arthur A. Houghton, Jr. and Gratia Buell Houghton Rinehart, the son and daughter, respectively, of the first party, or the survivor of them, and in the event of the decease of both, to the living descendents of the first party, per stirpes; and at the death of said Emeline Hollister Park [Grace Hollister Carman, Anne Shirley, and Mary Reeve Putnam-Cramer, respectively] to terminate and end the trust and, after the deduction of all costs and expenses, to distribute absolutely the net remainder thereof, together with any unpaid or accumulated income, to the descendants, per stirpes, of the first party, then surviving.

Decedent was born in 1867, as were two of the life beneficiaries, Emeline Hollister Park and Mary Reeve Putnam-Cramer. The other life beneficiaries, Ann Shirley and Grace Hollister Carman, were born in 1851 and 1871, respectively. Three of the life beneficiaries were living on the date of decedent's death, February 13, 1938, Anne Shirley having died on September 14. 1936. The trust of which she was life beneficiary is not involved in this proceeding.

Decedent's daughter. Gratia Buell Houghton Rinehart, was born in 1905. She and two daughters, born in 1927 and 1930, respectively,

survived decedent. Decedent's son, Arthur A. Houghton, Jr., was born in 1906. He and two daughters, born in 1930 and 1933, respectively, survived decedent. A son was born in 1940.

The Commissioner determined that the corpora of the three trusts, the life beneficiaries of which were living at decedent's death, should be included in her gross estate by virtue of section 302 (c) of the Revenue Act of 1926, as amended.[1] He concedes that the value of the respective life estates should first be deducted. The appropriate figures are set forth in the stipulation and need not be repeated here.

The income of each trust up to a certain figure was to be paid to a designated person and upon her death the corpus was to be paid to "the descendants, per stirpes, of the first party, then surviving." Nothing was made to turn upon the grantor's death by any express provision of the instrument, but the Commissioner argues that in New York. where the trusts were created and decedent resided, a person can not have "descendants" prior to her death, citing *Doctor v. Hughes*, 225 N. Y. 305; 122 N. E. 221, and consequently it was impossible as long as decedent lived to determine who her descendants were going to be and whether the interests of any particular remainderman would ripen into full and complete ownership. This, we are told, brings the case within the scope of *Helvering v. Hallock*, 309 U. S. 106, and *Klein v. United States*, 283 U. S. 231.

Disposition of the case will thus be seen to depend upon what decedent meant by her use of the word "descendants." It is true, although *Doctor v. Hughes* did not so hold, for it dealt with the word "heirs," that the word "descendant," according to its correct lexicographical and legal meaning, has reference only to the issue of a deceased person and does not include the offspring of a parent who is still living. See *Hillen v. Iselin*, 144 N. Y. 365; 374, 39 N. E. 368; *In re Plaster's Estate*, 179 Misc. 80; 37 N. Y. Supp. (2d) 498. But a trustor may use a descriptive word in other than its technical legal meaning and if it appears from the context "that he used a particular word in a broader or different sense than would attach to it unexplained, that sense is to be attributed to it which was intended by the author of the instrument." *Hillen v. Iselin. supra*. See *Doctor v. Hughes, supra*. "The word 'descendant' as generally used by the layman has reference to genealogy, or the succession of persons in the family relation, and has no necessary connection with the laws of in-

[1] (c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom : except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

heritance." *In re Plaster's Estate, supra.* It was no doubt in this popular sense that Judge Cardozo used the word "descendants" when, in speaking for the court in *Doctor* v. *Hughes, supra,* he remarked that the grantor's "sole descendants were two daughters," although the grantor himself was still alive at the time of the trial.

We think there can be no doubt in the instant case regarding decedent's intent when she gave the various remainders to her "descendants, per stirpes." Two factors make it clear she did not have the strict legal significance of the word in mind. The first is that there is no provision whatever as to what should be done with either income or corpus between the time of the life beneficiary's death and her own. The instrument contains a definite direction to terminate and end each trust at the death of the life beneficiary of that trust. There is also a direction to distribute corpus to the grantor's descendants "then surviving." At the time she created the trusts decedent was approximately 64 years of age and one of the life beneficiaries was 80. Decedent doubtless was aware of the possibility of her surviving this life tenant, if not some of the others who were her own age, and in fact she did survive the oldest one. It would be an unreasonable construction of the instrument to hold that without any provision to cover such a contingency she intended the disposition of the property and income to be held in abeyance for such time as she might survive the life beneficiary.

The second reason for rejecting the lexicographical meaning is that decedent used the word "descendants" in the same sentence in another connection where it clearly appears that she had reference to a situation in which she might still be alive. Surplus income was to be distributed *each year* to her son or daughter or the survivor of them or, if they should both die, "to the living descendants of the first party, per stirpes * * *." Here was provision for annual distribution without any thought of a period of delay to ascertain who might qualify as the grantor's descendants in the strict legal sense.

From these considerations we do not think decedent intended that "descendants" should mean only those who proved to be such by surviving her. By using the words "descendants per stirpes, of the first party, then surviving," we think she intended the corpus to be distributed at the time of the death of the respective life beneficiaries to the decedent's children, the share that would have gone to any deceased child to be divided among his or her offspring, and so forth. In this view of the trust instrument, which we think is the proper one, the death of decedent was immaterial in so far as the passing of any interest in the trust property was concerned, and the Commissioner's determination was erroneous.

The Commissioner advances another argument in an effort to save

the tax, namely, that there was a possibility the trust property would revert to decedent or her estate by operation of law because she failed to name a beneficiary who would take in the event her children and their issue should predecease her. This is the same argument, and the only one, that the Commissioner makes in support of his position that two other trusts subsequently created should be included in gross estate. Before considering it we shall state briefly the pertinent provisions of the other trusts.

One was created on January 7, 1932, by the execution and delivery of a trust indenture transferring certain property to decedent's son as trustee during the lives of decedent's daughter and the latter's elder daughter (born in 1927) and the survivor of them. The income was to be paid to decedent's daughter during her lifetime and thereafter to the daughter's children, and the issue of a deceased child, per stirpes. Upon the death of the survivor of the daughter and the daughter's elder daughter the trust was to terminate and the corpus was to be distributed to the descendants of the decedent's daughter in such proportions as she (the daughter) should designate by an instrument approved by the trustee; in default of such designation, to the surviving descendants per stirpes of decedent's daughter; or if there be none, to decedent's son. if living, and if not, to his descendants, per stirpes, then surviving.

The other trust was created on December 29, 1934, by the execution and delivery of a trust indenture transferring certain property to decedent's son as trustee. This trust, as to the disposition of income and principal, was much the same as the one created January 7, 1932. It was to terminate upon the death of the survivor of decedent's daughter and the latter's elder daughter. Income was payable to decedent's daughter for life. and thereafter to her issue per stirpes then living. Corpus was distributable to the issue of decedent's daughter as she (the daughter) should appoint with the approval of the trustee; in default thereof, to the daughter's issue per stirpes then living; in default thereof to decedent's son, or, if he be dead, to his issue per stirpes then living.

After making allowance in each instance for the value of the daughter's outstanding life estate, the Commissioner contends that these trusts were transfers intended to take effect in possession or enjoyment at or after death because they "leave open the possibility that the trust property might revert to the decedent or her estate," decedent having failed to name a beneficiary who would take in the event her daughter, granddaughter, their descendants, the decedent's son or the son's issue should predecease decedent.

We think this argument, which applies to all of the trusts, is

answered by the reasoning of the Third Circuit Court of Appeals in *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54. Here as there, "the grantor during his lifetime disposed of his interest in the corpus of the trust as well as any man could"; and "no inter vivos trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's [Commissioner's] view prevails." The only further provision which comes to mind that decedent could have made would have been that if everything else failed the remainder should pass to a charity. But, even there it would be open to the Commissioner to contend for the possibility that before her death the charity might disband and be nonexistent. In truth, decedent has given nothing contingently upon her death, which is "the vital factor" toward which our inquiry is directed. We should have supposed that the *Hallock* case rejected "linguistic refinement" and "verbal ingenuity" in favor of a realistic approach to "the plain purposes of a modern fiscal measure." In the present case nothing was transmitted from the dead to the living upon decedent's demise. The property had been given away beforehand.

The Commissioner's claim for an increased deficiency is denied and his original determination is reversed. Other matters having been stipulated,

*Decision will be entered under Rule 50.*