(174 App. Div. 152)

## McLEAN v. McLEAN et al.

(Supreme Court, Appellate Division, Second Department.　October 6, 1916.)

1. WILLS ⊜⟫589—POWERS—EXECUTION—CONFORMITY TO POWER.

J. gave property in trust for his son C. for life, with power of appointment to dispose of one-third of the fund to his wife or, to the testator's lineal descendants, or to any or either of them in such manner and proportion as he deemed proper. C. bequeathed the property as to which he had the power of appointment to his wife for life or during widowhood, and gave her power to appoint the principal to certain corporations. His will also gave the residue and remainder of his estate to his wife. *Held*, that, in view of the presumption in favor of the exercise of a power, the residuary clause of C.'s will exercised the power, so as to enable his wife to dispose of the corpus.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1292; Dec. Dig. ⊜⟫589.]

2. WILLS ⊜⟫694—SUFFICIENCY OF EXECUTION OF POWER OF APPOINTMENT—RESIDUARY CLAUSES.

Under Real Property Law (Consol. Laws, c. 50) § 176, providing that real property embraced in a power to devise passes by a will, purporting to convey all real property of the testator, unless the intent that the will is not to operate as an execution of the power appears either expressly or by necessary implication, the remainder or principal of the fund passed under the residuary clause to the wife, since an intent not to pass the property did not appear expressly or by necessary implication, and, while C. did not contemplate that the principal should pass by the residuary clause, every testator is presumed to know and intend that property, ineffectually disposed of, will pass under a residuary clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1662–1664; Dec. Dig. ⊜⟫694.]

3. POWERS ⊜⟫36(1)—EXECUTION—CONFORMITY TO POWER.

Where the power was to devise a fee, it could be exercised by merely devising a life estate, or estate during widowhood.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137, 139, 141, 143–149; Dec. Dig. ⊜⟫36(1).]

4. POWERS ⊜⟫33(2)—EXECUTION—CONFORMITY TO POWER.

An instrument, executing a power, need not refer to the source from which the power is derived.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 111–113, 115–118; Dec. Dig. ⊜⟫33(2).]

5. POWERS ⊜⟫36(1)—EXECUTION—CONFORMITY TO POWER.

Appointments, expressly declared for institutions, cannot be disposed of as merely precatory and not imperative.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137, 139, 141, 143–149; Dec. Dig. ⊜⟫36(1).]

Appeal from Special Term, Westchester County.

Suit by James C. H. McLean as sole surviving trustee under the will of James M. McLean against James C. H. McLean, individually and as administrator, etc., and others. From the decree (158 N. Y. Supp. 59) for defendant Schofield, as executrix, etc., defendants Harriet A. McLean, as executrix, trustee, and individually, and Alan D. McLean appeal. Affirmed.

⊜⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

These are appeals from a judgment in a suit for judicial settlement of the accounts of the surviving trustee under the will of James M. McLean. This testator died May 13, 1890, leaving two sons, George H. and Cornelius, who both married. This will gave the trust·property to be held by trustees, who were to apply the net income of half of the residuary estate to the use of each son (George H. and Cornelius) during his natural life. On the death of either son, half of his residuary estate was to be paid over to his living lawful issue. B**t** each son had a power of testamentary appointment to dispose of one-third of his share, of which he had enjoyed the life use, "among my then living lineal descendants and his wife him surviving, or any, or either of them, and in such manner and proportions as to him shall seem proper." If, however, either son should have no surviving issue, then the share, or so much thereof as shall not be disposed of by his testamentary appointment, should be paid over to the other son, absolutely or to his issue, taking per stirpes.

George H. had two sons, James C. H. McLean, plaintiff, and Alan D. McLean, one of the defendants. Cornelius died, leaving a widow, Leslie (but no issue), on February 18, 1908. About two years before his death, he executed a will, in which he gave the use of all the property over which he had the power of appointment to his wife, Leslie, during life or widowood, with a power to appoint in her will, the principal, one-half thereof to the Mt. Vernon Hospital (or so much as would be needed for a wing or ward), and the remaining half to the Westchester Woman's Club of Mt. Vernon. His wife was also named as residuary legatee. The precise wording of this provision appears in the subsequent opinion.

On Cornelius' death, a question arose as to the widow's right to the capital of one-third of Cornelius' interest in this trust fund (one-third being the extent of this power under will of James M. McLean), which amounted to $93,305.81. All then agreed that these securities should be set aside, and that she should enjoy the income, and that, on her remarriage or death, there should be a judicial determination of the title to the capital of this fund. On March 9, 1909, Mrs. Leslie A. McLean executed a will, followed by a codicil on May 18, 1912, by which she provided that, if her estate should exceed $75,000, certain small legacies should be paid to relatives, and one of $2,000 to the Mt. Vernon Hospital, and $1,000 to the Westchester Woman's Club; also another of $2,000 to the Martha Wilson Home. All the rest, including any property to which she was entitled then or thereafter under the wills of James H. McLean and Cornelius McLean, except as in said last will and testament provided, the testatrix bequeathed to her sister, Laura M. Schofield.

On February 18, 1913, George H. McLean died. His will gave all his property to his wife and two sons. Mrs. Leslie A. McLean died on March 19, 1915, leaving in force the dispositions by her will as above.

The chief question is the construction and effect of the will of Cornelius McLean.

Plaintiff and the representatives of George McLean contended that, beyond the life estate to his widow, Leslie, Cornelius had not validly exercised his power of appointment. Defendant Schofield claimed that an execution of the power had been exercised so as to vest same in the widow, which by her testamentary appointment then passed to her sister and other legatees. This is also claimed on behalf of the hospital and the Wilson Home.

The learned Justice at Special Term held that under the limits of the original power of appointment, Cornelius could not name the hospital and woman's club, as he was confined to the donor's "lineal descendants" and the son's surviving wife. He sustained the appointment to the wife, Leslie, for life or during widowhood, of the property "over which he had the power of appointment." The residuary clause was held effectually to pass and exercise in the wife's favor the power to appoint the capital of the trust fund.

The appeals here are by the plaintiff as an individual, and in his representative capacity. Mrs. Harriet A. McLean also appeals as executrix, trustee, and individually, and Alan D. McLean, individually, also is an appellant.

Argued before CARR, STAPLETON, RICH, and PUTNAM, JJ.

Albert B. Boardman, of New York City (Philip W. Boardman and Henry F. Herbermann, both of New York City, on the brief), for defendants McLean.

Arthur I. Strang, of White Plains, for respondent Schofield.

Frederick Clark, of Mt. Vernon, for respondent Mt. Vernon Hospital.

Arthur M. Johnson, of Mt. Vernon, for respondent Martha Wilson Home.

PUTNAM, J. [1-5] The completed exercise of the testamentary power of appointment, through the effect given to the residuary clause in the will of Cornelius McLean, works out a result which Cornelius McLean may not have foreseen. Apparently it reverses the testator's intention as first expressed, which, though, perhaps, but a partial plan, was to give his wife an interest during her life or widowhood. Although he gave a conditional right to income, that did not exhaust his acts in execution of the power. Neither did the execution of the power stop in his abortive attempt to make an appointment to the two institutions who were not the legitimate "objects" of the power.

This result, that the wife could dispose of the corpus of the fund, comes from a presumption of law introduced by our Revised Statutes. The revisers' notes point out the unsatisfactory and confusing state to which the law of powers had come in England, especially the over-technicalities surrounding execution of powers which led to marked divergences between the law courts and those of chancery. Rev. Stat. (2d Ed.) Appendix, vol. 3, pp. 591, 592. Our revisers vigorously cut the knot, in a way that was afterwards followed in the English Wills Act, in 1837, and in many of our states. See Am. & Eng. Enc. vol. 22, p. 1119. The instrument executing the power need not now refer to the source from which the power is derived. As to wills, there was a still broader rule:

"Lands embraced in a power to devise, shall pass by a will purporting to convey all the real property of the testator, unless the intent that the will shall not operate as an execution of the power, shall appear, expressly or by necessary implication." 1 R. S. 737; Real Prop. Law, § 176; 4 Kent. Com. 334.

This statute "steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property." Lockwood v. Mildeberger, 159 N. Y. 181, 188, 53 N. E. 803. See, also, N. Y. Life Ins. & T. Co. v. Livingston, 133 N. Y. 125, 30 N. E. 724; Hogle v. Hogle, 49 Hun, 313, 2 N. Y. Supp. 172. Section 18 of the Personal Property Law (Consol. Laws, c. 41) assimilates personalty to real property, by adopting the same words as to powers over personalty, so that this rule as to powers is, in the same manner, to be applied to wills of personalty. Hutton v. Benkard, 92 N. Y. 295.

Such a residuary clause ordinarily purports to convey all the testator's property. Thus under the canon of construction to avoid intes-

tacy, even in the absence of the New York statute as a guide, Justice Story deduced from a residuary bequest a full execution of such a power. Blagge v. Miles, 1 Story, 426, Fed. Cas. No. 1,479.

The bequest by Cornelius McLean's will was:

"I give and bequeath the use of all the property and estate over which I have the power of appointment under the last will and testament of my beloved father, James M. McLean, deceased, to my wife, Leslie A. McLean, as long as she shall remain my widow, with full power to appoint and direct by last will and testament the payment, transfer and conveyance of the principal of which she shall have enjoyed the use during her life or widowhood, one-half thereof to the Mt. Vernon Hospital to be used so much thereof as shall be necessary in building a wing or ward to said hospital, to be known as the Leslie A. McLean Memorial Ward, and any surplus to be invested by the trustees thereof, and the income derived therefrom to be applied towards the proper furnishing and maintaining of the same; the remaining half to the Westchester Woman's Club of Mount Vernon.

"All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my beloved wife, Leslie A. McLean, whom I hereby name to be executrix of this my last will and testament."

Although counsel questions the right to create by appointment merely a life estate, when the testator's power extended to appointing the fee, we think there is no ground for such objection. Real Property Law, § 177, expressly declares that a disposition is not void on the ground that it is more extensive than was authorized by the power, but an estate or interest so created, so far as embraced by the terms of the power, is valid. If we may eliminate the excess as harmless, then the omission to go to the full extent of the power could not be a grievance, even if the execution stop at an estate for life or for years, as the donee of the power is not bound to dispose of the whole fee. Root v. Stuyvesant, 18 Wend. 257, 273.

The appointments expressly declared for the hospital and woman's club are not to be got rid of by treating them as merely precatory words, and not imperative. Smith v. Floyd, 140 N. Y. 337, 35 N. E. 606.

The real question is whether this gift of an estate in income, for life or widowhood, followed by the nonexecution of the attempted dispositions for the two institutions, excludes our statutory presumption that these failing and defective gifts may be supplemented, and the power fully exercised, through the force of an unqualified residuary clause.

A residuary clause is held to include property described by appointments failing, or becoming invalid. In re Hunt's Trusts, L. R. 31, Chan. Div. 308. See 31 Cyc. 1142. Still in the other parts of a will there may be inconsistencies by partial gifts, which may operate to exclude, or at least to circumscribe, the terms of a general residuary clause. Are there, then, in this will, such inconsistencies as would, "expressly or by necessary implication" (for that is the revisers' term restricting our right of construction), exclude the inference by statute that through this residuary clause the power was exercised? See N. Y. Life Ins. & T. Co. v. Livingston, supra; Hirsch v. Bucki, 162 App. Div. 659, 148 N. Y. Supp. 214.

As Justice Young said in his opinion in this case:

"It must also be observed that, under the statutes above quoted, the court is not called upon to find or determine a direct intention on the part of the testator, as gathered from the will, to execute the power. That intent is presumed; the contrary intent must appear. The duty of the court in this respect is to consider the provisions of the will and determine whether or not there is disclosed by the will, expressly or by necessary implication, an intention on the part of Cornelius not to execute this power of appointment."

On this subject, testamentary intent really means a purpose to make a will "according to its statutory effect." Crooke v. County of Kings, 97 N. Y. 421; Farmers' Loan & Trust Co. v. Kip, 192 N. Y. 266, 279, 85 N. E. 59.

In Scriven v. Sandom (2 J. & H. 743), a testator, under a marriage settlement covenant, was to pay to the settlement trustees £2,000 in trust for his wife for life, with remainder to his general appointees by deed or will. By his will, he directed his executors to pay £2,000 to the trustees, on which the income was to be paid to his wife for life. He then bequeathed her his residuary estate, subject to certain legacies. Wood, V. C., held that this life estate was not inconsistent with the widow's receiving the capital of the fund, as the facts did not bring the case within the principle that a partial gift of a fund may be read as excluding the intention to appoint the whole by a residuary bequest.

Our decisions in N. Y. Life Ins. & T. Co. v. Livingston, supra, and Lockwood v. Mildeberger, supra, go even more emphatically to execute a power through a residuary bequest.

This result seems to be sufficiently supported without adverting to the additional fact that the testator had no other property, as appears by the transfer tax affidavit, as well as by accounts of his estate as filed, in which situation courts sometimes have inferred from the absence of property that such a power was necessarily the one and only object on which the residuary bequest could operate.

This, then, is an instance where it is safer to adhere to our statutory presumption, adopted before powers had come into use in New York, and now accepted as a practical guide in the construction of wills, having become a long-settled rule of property, rather than to attempt to disturb it by drawing distinctions based on the testator's supposed expectations.

To weaken this rule by reading into the bestowal of a life interest upon the wife an intention to impair the force of the residuary clause would be a violence to the testator's legal intention, as well as a dangerous interference with a statutory rule of property both in land and in personalty.

So I advise to affirm with costs to respondents, payable out of the estate. All concur.