Irving H. Saypol, J.
This is a proceeding (Civ. Prac. Act, art. 79) by the petitioners, Samuel Thorne, formerly Samuel Thorne, Jr., and The Hanover Bank, for the judicial settlement of their account as surviving trustees of an express trust created by Samuel Thorne, Sr., in a letter writing dated March 10,1902, and for the construction of the trust instrument in conjunction with the will of Joel W. Thorne, Sr., for whose immediate benefit the trust was created.
In March, 1902 Samuel Thorne, Sr., had four sons, namely, Edwin, William V. S., Samuel, Jr., and Joel W. (Sr.). On March 10 of that year he established the instant trust in a letter addressed to Joel and a few days later delivered the securities constituting the corpus of the trust to his sons Edwin and William, as trustees. All of the dispositive provisions are contained in Article ‘ ‘ First ’ ’ of the letter, reading as follows:
“ They [the trustees] shall apply the income thereof to your [Joel’s] use during your lifetime, in quarterly payments, or oftener, in their discretion.
“ Upon your death, leaving lineal descendants you surviving, they shall apply the income of the said Trust Fund to the use of such descendants during the lifetime of my son, Samuel *128 Thorne, Jr., in such shares, whether equal or unequal, as they may, in their absolute discretion, deem advisable.
“ Upon the death of the survivor of yourself and the said Samuel Thorne, Jr., the said Trustees shall convey, assign, transfer and pay over the principal of the said Trust Fund and all accumulated income thereon to your children and lineal descendants, in such shares, whether equal or unequal, and upon such terms, as you may direct by your Last Will and Testament, or if no such direction is given, then in equal shares per stirpes and not per capita.
“ In case of your death, without leaving any lineal descendants you surviving, then, upon your death, the said Trustees shall convey, assign, transfer and pay over the principal of the said Trust Fund to me, or in case of my death, to my legal representatives. ’ ’
The settlor augmented the corpus of the trust pursuant to instruments executed in 1905, 1907, 1909, 1910 and 1911. On December 24, 1909 Edwin and William, as trustees, properly designated their brother Samuel (now a copetitioner) as a cotrustee.
The settlor died on July 4, 1915. His son Joel, the original life beneficiary, died on May 30, 1924, survived by one son, Joel W. Thorne, Jr., who had been born on October 16, 1914. Joel the elder left a will, dated April 21, 1920, which did not refer to the power of appointment granted him by the trust instrument. Following’ various specific gifts of both realty and personalty, the will disposed of the residue as follows (par. “ Fifth ”): “ I give, devise and bequeath to my son, Joel Wolfe Thorne, Jr., all the rest, residue and remainder of my property, whether real or personal, and wheresoever situated, or, in the event that my son does not survive me, I give, devise and bequeath the same to my said cousin Dr. Victor Corse Thorne. ’ ’
After the death of Joel the elder in 1924, the trustees applied the income from the trust fund to the use of Joel the younger. The latter died in an airplane accident on October 18,1955, survived by his son, sole lineal descendant, Jonathan Eager Thome, born on February 5, 1943, who is represented herein by the special guardian. The will of Joel the younger was admitted to probate in California, where letters of administration c.t.a. were issued to Charles C. Montgomery, Jr. on June 29, 1956. The Surrogate’s Court, New York County, later issued limited ancillary letters of administration c.t.a. to Mr. Montgomery.
During 1953 Joel W. Thorne, Jr., executed three written bills of sale, assigning to one Benjamin L. Meisel interests in the corpus of the trust to the extent of $24,000. On October 8,1954, *129 he executed a loan agreement with the First National Bank of Philadelphia, Philadelphia, Pa., now The First Pennsylvania Banking and Trust Company, in which he assigned all his interest in the corpus as security for a loan of $375,000. On September 2, 1955 there was served upon the corporate trustee petitioner a warrant of attachment against the property of Joel, Jr., in an action against him brought by the United States of America to recover $6,069.48 with interest from February 26, 1948.
The accounts of the trustees have been judicially settled on four prior occasions, resulting in judgments entered respectively on February 27, 1926, March 22, 1934, May 4, 1942 and November 24, 1944. In connection with the judicial settlement of the account of the trustees from June, 1933 to January, 1941, Joel W. Thorne, Jr., interposed an affirmative defense that he was the only person entitled to be the beneficiary of the trust estate and was immediately entitled to the entire remainder. The instant petitioner, Samuel Thorne, who was a defendant therein, set up a cross answer denying that all the interests were merged in Joel and denying that Joel was entitled to immediate possession of the corpus. The plaintiffs therein contended that the trust was indestructible during the lifetime of Samuel. This court granted the plaintiffs’ motion for judgment on the pleadings, struck out Joel’s defense and held that while Joel was entitled to the income of the trust, he was not then entitled to immediate possession of the corpus (Thorne v. Thorne, N. Y. L. J., April 9, 1942, p. 1493, col. 6).
When the decision denying Joel’s claim to immediate possession of the corpus was rendered in 1942, Joel’s son, Jonathan Eager, the infant represented herein by the special guardian, was not yet born. The special guardian here urges a certain measure of conclusiveness of the 1942 judgment to the issues raised in this proceeding. While the rights of persons thereafter born may under certain circumstances be determined in proceedings antecedent to birth (Tonnele v. Wetmore, 195 N. Y. 436; Matter of Willis, 6 Misc 2d 218, 221), the present issues, such as those raised by the creditors, so differ from that essential to the judgment in the prior litigation as to preclude the application of the principles of res judicata.
The court is asked to determine the following principal questions : (1) Was the power of appointment over the corpus of the trust given to Joel the elder in the 1902 trust instrument effectively exercised by the residuary clause in his will in favor of his son? (2) Did. the trust end upon the death of Joel the younger in 1955 and become the property of his estate notwith *130 standing the fact that Samuel Thorne, named as a measuring life, is still alive? The personal representative of Joel’s (Jr.) estate and his creditors urge that both questions be answered in the affirmative. The guardian of Joel’s son, on the other hand, contends that his ward is presently entitled to the income of the trust, is entitled to the corpus upon the death of Samuel Thorne, and that neither the younger Joel’s estate nor his creditors have any claims against the trust estate. In the opinion of the court, Joel the elder effectively exercised the power of appointment in favor of his son but the trust did not terminate upon the death of Joel the younger.
As set forth above, the trust instrument provided that upon the death of the survivor of Joel the elder and Samuel Jr., the trustees were to pay over the corpus to said Joel’s “ children and lineal descendants, in such shares, whether equal or unequal, and upon such terms, as you [Joel] may direct by your Last Will and Testament, or if no such direction is given, then in equal shares per stirpes and not per capita.” The elder Joel’s will executed in 1920 made no reference to a power of appointment but left his residuary estate to his son.
Section 18 of the Personal Property Law provides as follows: ‘5 Personal property embraced in a power to bequeath, passes by a will or testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implication.” To the same substantial effect, except for the omission of the word “ therein ”, is section 176 of the Real Property Law.
The power of appointment given to Joel the elder, being limited to exercise by will to the classes of his “ children and lineal descendants,” was a special testamentary power of appointment in trust (Real Property Law, § 135, subd. 1; § 138, subd. 1; Hillen v. Iselin, 144 N. Y. 365), applicable to personal as well as real property (Cutting v. Cutting, 86 N. Y. 522, 544-547; Matter of Moehring, 154 N. Y. 423, 427). Such a special power, as well as a general power, is embraced by sections 18 of the Personal Property Law and 176 of the Real Property Law, supra (Lockwood v. Mildeberger, 159 N. Y. 181; Matter of Davis, 186 Misc. 397).
It is settled that a testamentary gift of the residue is sufficient to execute a power of appointment which has been conferred upon the testator unless it appears expressly or by necessary implication from the language of the will that the will should not operate as an execution of the power (Lockwood v. Mildeberger, supra; McLean v. McLean, 174 App. Div. 152, affd. *131 223 N. Y. 695; Matter of Davis, supra). Section 18 of the Personal Property Law and the companion Beal Property Law section make the intention of the testator the controlling factor and create a rebuttable statutory presumption of an intention to exercise the power (Chase Nat. Bank v. Chicago Title & Trust Co., 246 App. Div. 201, 205, affd. 271 N. Y. 602; Matter of Spitzmuller, 279 App. Div. 233, 240, affd. 304 N. Y. 608).
Clearly there was no express provision in the will of Joel the elder, showing that he did not intend to exercise the power. In Lockwood v. Mildeberger (supra, p. 186) it was stated that the term “necessary implication” found in sections 18 and 176 “ results only when the will permits of no other interpretation. Necessary is defined to mean: ‘ Such as must be;’ ‘ Impossible to be otherwise; ’ ‘ Not to be avoided; ’ 1 Inevitable. ’ The intent not to execute the power, therefore, must not be implied unless it so clearly appears that it is not to be avoided.”
The emphatic command of the statutes is illustrated by the holdings that a power of appointment conferred in a subsequent trust agreement is validly exercised by a previously executed will containing no specific exercise of any power of appointment (County Trust Co. v. Quencer, 183 Misc. 922, affd. 269 App. Div. 861, affd. 296 N. Y. 559; cf. Hirsch v. Bucki, 162 App. Div. 659; see 3 Powell on Real Property, pp. 346-347; Ann. 91 A. L. R. 621).
The guardian strongly urges that since Joel the elder left his residuary estate, in the event his son predeceased him, to a cousin, Dr. Victor Corse Thorne, an ineligible appointee under the power, this fact necessarily implies that the testator did not intend to exercise the power of appointment. He cites in support of this contention Chase Nat. Bank v. Chicago Title & Trust Co. (supra, see, especially, the opinion of the referee in 155 Misc. 61, 71-75); Guaranty Trust Co. v. Halsted (245 N. Y. 447) and Stewart v. Keating (15 Misc. 44). These cases are distinguished and placed in proper perspective in Matter of Davis (186 Misc. 397, 401-403, supra), in a manner in which this court concurs. It is true that in Matter of Davis the will was executed before the power was given and therefore without knowledge of its terms. In Lockwood v. Mildeberger (159 N. Y. 181, supra) however, the power of appointment was conferred upon an income beneficiary 16 years before the donee executed her will. There the testamentary power was limited to an appointment in favor of the donee’s husband; there was a gift of the residue to the donee’s children and in default thereof to her husband. In holding that no intent not to exercise the power in favor of the husband was to be implied from the facts that the children, *132 if any, were ineligible appointees and the bequest to the husband was only substitutional, the court declared (pp. 187-188) that if there were something in the will to show that the donee testatrix both knew the terms of the power and had them in contemplation in making her will, “then it might be urged that the implication was necessary that she did not intend to execute the power of appointment” (italics added). There is nothing in the will of Joel the elder to show that he had the power of appointment in mind when he executed his will; nor is there anything to show that he consciously and deliberately omitted to exercise the power so that the corpus would go, pursuant to the trust provisions, to his children and lineal descendants in equal stirpital shares. Under these circumstances, as stated in Lockwood v. Mildeberger (supra, p. 188), “ the statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property.”
Having held that the effective exercise of the power of appointment by the will of Joel the elder entitles his son’s estate to the corpus of the trust, the court will now consider whether the trust ended upon the death of the younger Joel in 1955 or whether it will continue during the lifetime of Samuel Thorne (a petitioning trustee) for the benefit of lineal descendants of Joel the elder.
The trust instrument provided that upon the death of Joel the elder, leaving lineal descendants him surviving, the income was to be applied “ to the use of such descendants during the lifetime of my son, Samuel Thorne, Jr., in such shares, whether equal or unequal, as they may, in their absolute discretion, deem advisable. ’ ’
The personal representative of the younger Joel’s estate and his creditors maintain that the trust instrument is not the product of expert draftsmanship; that words like ‘ ‘ children ’ ’ and “ lineal descendants ” were used loosely and that the settlor intended merely to create a spendthrift trust for the benefit of his son, with a remainder in Joel’s children. They point to the words, “ you [Joel, Sr.] surviving,” as limiting the class of eligibles who could become beneficiaries to those who were in existence in 1924, when the elder Joel died — only the younger Joel met that description. They claim further that notwithstanding the fact that the trust by its express terms was to continue until the death of Samuel Thorne, who is still alive, the object and purpose of the trust were fully accomplished upon the death of the younger Joel and hence the court must decree its termination, as its “ natural term ” has run (citing *133 Crooke v. County of Kings, 97 N. Y. 421; Whitman v. Terry, 196 App. Div. 282; Real Property Law, § 109).
The guardian, on the other hand, contends that the settlor purposely used proper legal terms of varied meaning which should be strictly and literally construed, that as a “ lineal descendant ” his ward need not have been in esse when his grandfather Joel died in 1924, and that the settlor was not only interested in future estates, but intended to protect them fully during the stipulated term of Samuel Thorne’s life.
As stated in Crooke v. County of Kings (supra, p. 439) the natural term of a trust is “ the lives of all the beneficiaries,” while the stipulated term is “ the close of the selected and designated lives The collation in Matter of Gardner (4 Misc 2d 435) of the decisions distinguishing between the natural and stipulated terms of a trust shows that most cases discussing the distinction are concerned with the question initially of validity of a trust, and not with the construction of a valid trust. In such cases, while the stipulated term, standing alone, might invalidate the trust through an unlawful suspension of the power of alienation, the natural term, showing the full accomplishment of the purposes of the trust, might save it. In the instant case, the stipulated term raises no question of unlawful suspension so that facet of the earlier cases is unimportant.
The relationship between the stipulated term and the natural term where only the construction of a valid trust was involved, was considered in Whitman v. Terry (supra) and Matter of Gardner (supra). In Whitman v. Terry the testator created a trust for the benefit of his granddaughter during the lives of his two sons. Upon the death of the sons, the trust was to terminate and the corpus was to be paid over to the grandchild or her heirs. The grandchild died before the two sons. The court found that the primary object in the mind of the testator was to create a trust for the sole use and benefit of the granddaughter, and upon her death even before the expiration of the stipulated term the trust terminated and the corpus passed to her heirs at law.
In Matter of Gardner the will provided that the income from the residuary estate should be paid to three named children of the testator during the lives of two named granddaughters. Upon the death of the grandchildren the principal was to be paid to the three children equally or to their then living issue, per stirpes. The children survived the testator but predeceased the granddaughters. The court rejected the contention that the duration of the trust should be measured solely by the natural term of the children’s lives. The testator’s direction was to be *134 followed and the remaindermen determined on the deaths of the two grandchildren.
In the opinion of the court, the position of the guardian on this branch of the case appears to be sound. The use by the settlor of the words ‘ ‘ lineal descendants, ’ ’ obviously of broader import than the word “children”, used elsewhere, connotes a consideration for other than issue of the first degree. Obviously, the creation of a spendthrift trust for the elder Joel was not the sole object of the settlor, since otherwise there would have been no need for or purpose to the second sentence of Article “ First ” and the measurement of the trust on the additional life of Samuel Thorne. Since there nowhere appears an intention to limit the use of the words “lineal descendants” to children, it would seem immaterial that the infant Jonathan Eager Thorne was not yet born when his grandfather died in 1924. The expression “ you surviving” need not be given literal meaning. The trust instrument sufficiently sets forth an intent to give the income to those of the elder’s lineal descendants who are alive during the lifetime of Samuel Thorne, the second measuring life.
It is held that the trust has not terminated so that demands for immediate payment from the remainderman’s interest are premature. The United States Government as a creditor does not ask for payment but asks only that its lien by attachment be established. Such relief is authorized by subdivision 6 of section 916 of the Civil Practice Act and it is granted.
No objections have been interposed to the account although the special guardian has reserved on that branch of the proceeding. He may have until September 6,1957 to serve and file his supplemental report and objections, if any, to the account. If there be any such objections further decision will be rendered thereon. If there are no objections to the account, an order may then be settled accordingly.
(Supplemental opinion.)
The court, in its decision dated August 8, 1957, has construed the trust agreement as an incident of this accounting proceeding and has also sustained the validity of the attachment obtained by the United States Government as a creditor of the deceased life tenant, Joel W. Thorne, the younger. The latter issue was one of several other ancillary questions arising from claims of creditors of the deceased life tenant. Decision on the other claims was withheld as premature in view of the effect of the construction that enjoyment of the vested interest was suspended pending the continuance and termination of the trust at the *135 end of the second measuring life. The distinction in the adjudication of the Government’s lien of attachment arose from the superficial treatment which that question had received from the parties. Presentation was confined to the pleading of the ancillary administrator and the trustees but otherwise was not argued except that the right was reserved to raise the question. It cannot be said from the foregoing that upholding the validity of the attachment is the product of a judgment on the merits. All parties except the Government are in accord now that decision of that question should be withdrawn and suspended. The Government argues that it should not be compelled to relitigate the question of the validity of its lien of attachment when it proceeds to judgment in the related lawsuit. The trustees suggest, however, that that is the proper forum in which that issue should be resolved.
I am satisfied that the question has not been accorded a proper adversary presentation. Its resolution on the merits here is collateral because of the nature of this proceeding. The decision on construction dated August 8, 1957 will be recalled and modified by deleting therefrom the determination upholding the validity of the lien of attachment of the United States Government, at the same time reserving to any of the interested parties the right to proceed against the attachment in the action by the Government against the estate of its debtor, or otherwise as the parties may be advised.
The supplemental report of the special guardian, filed on September 6, 1957, which finds the account unexceptionable, is approved and the account is ordered settled and filed. The guardian recommends allocation of costs and allowances of this proceeding to principal, in which the trustees concur. The ancillary administrator of the deceased Joel W. Thorne asks that such charges should be made against income. The authorities cited by the latter, such as Matter of Bishop (277 App. Div. 108), Matter of Wolff (79 Misc. 177) and Matter of Cotheal (121 Misc. 665) are inapposite or have been overruled and on the authority of Matter of Schlussel (284 App. Div. 68); Matter of Matthews (280 App. Div. 23) and City Bank Farmers Trust Co. v. Green (160 Misc. 370) the court would not be justified in depriving the income beneficiary of a large part of his income by assessing against him this extraordinary expense of construction, in connection with which his motives are in no way subject to any criticism.
Costs and allowances accordingly will be borne by the principal. Settle order.