OPINION OF THE COURT
Eve Preminger, S.
As an incident to the judicial settlement of two intermediate accounts, the trustees ask the court to determine whether and to what extent a limited testamentary power of appointment was effectively exercised by decedent’s son.
Decedent, Dina W. Block, died in 1981, a domiciliary of New York. Her will established a trust of one half of her residuary estate for the benefit of her son Paul, Jr. and his twin sons, Allan and John. The trust terminated upon Paul, Jr.’s death and he was given a limited power to appoint the trust principal by will "unto and among” these two sons in whatever proportion he chose. The twins’ older half-brother Cyrus was not a permissible appointee. In default of the exercise of the power, the trust fund was to be divided into separate trusts for the life income benefit of Allan and John. United States Trust Company, Paul, Jr. and his brother William served as trustees under Dina Block’s will.
Paul, Jr. died an Ohio domiciliary in 1987. His will, which was executed more than a year after his mother’s death, did not refer to his power of appointment under her will. It left his entire residuary estate to a revocable inter vivas trust he had created in 1974.[1] Under the 1974 trust, after certain payments to his wife (not relevant here), there are separate subtrusts for all three of Paul’s sons: 35% each to Allan and John, and 30% to Cyrus.
The trustees seek direction whether Paul’s disposition of bis residuary estate without reference to the appointive assets, and in partial violation of the limitations Dina imposed, nevertheless effectively exercised his limited power of appointment. It is clear that this question must be answered by referring to the local law of New York rather than Ohio. (EPTL 3-5.1 [g] [2] [A]; Matter of Acheson, 28 NY2d 155, 164; Matter of Bauer, 14 NY2d 272, 277; Matter of Deane, 4 NY2d 326, 331.)
In New York, an effective exercise of a power of appointment need not refer to the power. (EPTL 10-6.1 [a], [b].) The *718 Legislature has abrogated the common-law rule still in effect in Ohio which requires that a donee manifest a clear intent to exercise the power (see, Clinton County Natl. Bank & Trust Co. v First Natl. Bank, 62 Ohio St 2d 90, 403 NE2d 968). Under New York law a conventional residuary clause disposing of the testator’s remaining assets exercises a power of appointment unless "the intention that the will is not to operate as an execution of the power appears expressly or by necessary implication” (EPTL 10-6.1 [a] [4]; see, Lockwood v Mildeberger, 159 NY 181).
There is no question that Paul’s will did not expressly negate an intention to exercise the power. The more difficult question is whether there is an adequate basis for finding "by necessary implication” that Paul did not intend to exercise the power.
The New York cases and statutes governing the exercise of powers of appointment strongly favor finding a valid exercise, in furtherance of the presumed intention of most power holders. In addition to the presumption of exercise by a residuary disposition discussed above, compliance with specific directions by the donor of a power as to certain formalities of exercise is excused by EPTL 10-6.2. Furthermore, under EPTL 10-6.6 the exercise of a power in favor of some persons who are not permissible appointees is not void, nor need such an over-extensive exercise of a power give rise to a "necessary implication” that the donee did not intend to exercise the power. (See, Matter of Slocum, 192 Misc 1026.)
Courts have also been restrictive in finding a "necessary implication” not to exercise a power. (Lockwood v Mildeberger, 159 NY 181, 186, supra; Matter of Slocum, 192 Misc 1026, supra; Matter of Davis, 186 Misc 397.) It has been held that proof of the implied intent not to exercise must be " '[impossible to be otherwise’ ”, " '[n]ot to be avoided’ ” and " '[inevitable’ ”. (Lockwood v Mildeberger, supra, at 186.) Several cases have required that the intent be demonstrated from an examination of the text of the will and ruled that evidence outside the will must be rejected. (Matter of Hopkins, 46 Misc 2d 273 [Sur Ct, NY County 1964]; Matter of Thorne, 9 Misc 2d 126 [Sup Ct, NY County 1957]; In re Farrell’s Will, 106 NYS2d 878 [Sur Ct, Kings County 1951].) In those few cases where the necessary intent not to exercise a power of appointment has been found, the evidence has been overwhelming. (See, e.g., Guaranty Trust Co. v Halsted, 245 NY 447 [exercise would have caused perpetuities invalidity]; Chase *719 Natl. Bank v Chicago Tit. & Trust Co., 246 App Div 201 [involving a written attempt to release the power].)
Nothing in the text of Paul, Jr.’s will gives rise to the "necessary implication”. The only possible indicia are: (1) the fact that this is the will of the domiciliary of a jurisdiction which would not deem it to have exercised the power (Clinton County Natl. Bank & Trust Co. v First Natl. Bank, 62 Ohio St 2d 90, 403 NE2d 968, supra); (2) the fact that the presumed exercise of the power was inconsistent with its limitations; and (3) the inference that the donee knew of the existence of the power because he was a trustee of the appointive assets.
None of these factors standing alone has been sufficient to trigger the imposition of the necessary implication. (See, Lockwood v Mildeberger, supra; Matter of Slocum, 192 Misc 1026, supra; Matter of Davis, 186 Misc 397, supra; Matter of Hopkins, 46 Misc 2d 273; Matter of de von der Hellen, 9 Misc 2d 927; In re Farrell’s Will, 106 NYS2d 878 [Sur Ct, Kings County 1951], supra; Matter of Thorne, 9 Misc 2d 126, supra.) No different result occurs when they have combined. It is true that dictum in prior cases suggest that actual knowledge of the existence of the power "might be” sufficient to create the implication. (Lockwood v Mildeberger, supra, at 187; Matter of Davis, 186 Misc 397, 401.) But it must be evident that the existence of the power was within the testator’s contemplation at the very moment of execution of the will. Nothing in the routine responsibilities of a trustee would establish this level of knowledge. Although Paul’s failure to refer to his power of appointment could be interpreted as reliance on the Ohio rule that silence is nonexercise, it is at least as likely that he did not have the power in mind when he signed his will.
It must be remembered that the New York statutory presumption that a power has been exercised goes beyond the actual intent of the donee. It applies, for example, to situations where the power was created after the will was executed. (See, e.g., Matter of Davis, supra; Matter of Thorne, 9 Misc 2d 126, supra; Hirsch v Bucki, 162 App Div 659.) This is because the "emphatic command” of the statute (Matter of Thome, supra, at 131) is an example of the long-approved concept that, in the absence of compelling evidence of an intention not to exercise, "the statute steps in and sends the property, subject to the power, in the same direction as that in which the testatrix has sent her own property.” (Lockwood v Mildeberger, supra, at 188.) This is the result effectuated here *720 by holding that Paul has effectively exercised his power of appointment in his will.
Having deemed the power exercised, it is now necessary to determine the extent of its exercise. It is undisputed that the power could not be exercised in favor of Cyrus. The question is what becomes of the 30% share invalidly allocated to him by Paul, Jr.’s will. Was the power of appointment exercised with respect to 70% only or the entire appointive property? Here the court’s task is to further the valid portions of the testator’s plan where to do so does not disturb his fundamental intention.
There is nothing in the pertinent instruments or in the applicable statutes which warrants the conclusion that the power of appointment was executed only partially. The provisions of Paul’s will and trust dispose of property of much greater value than the appointive assets.[2] The court determines that Paul, Jr.’s bequests of 35% each of the residuary estate to Allan and John demonstrate that his testamentary scheme was to benefit his twin sons equally. Consequently, the court concludes that the entire appointive property is to be disposed of for their primary benefit, in equal shares.
The accounts being proper in all respects are settled.

. This agreement was amended in 1980 and again in 1982, two months after Paul, Jr. executed his will.

. The main difference between the trusts for Allan and John under Paul, Jr.’s will and those created by his mother’s will if he failed to exercise his power of appointment is the greater discretion Paul gave for trustees to invade for the twins.