Matter of Dinnal (Hanlon) (2024 NY Slip Op 50057(U))

[*1]

Matter of Dinnal (Hanlon)

2024 NY Slip Op 50057(U)

Decided on January 18, 2024

Surrogate's Court, Queens County

Kelly, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 18, 2024
Surrogate's Court, Queens County

In the Matter of the Application of Merlene Dinnal, as a 
 Legatee of a Specific Bequest in the Last Will and Testament of Grace Hanlon, Deceased, For Turnover of Property Pursuant to SCPA § 2102 (4).

File No. 2022-2/A

For Petitioner: Patrick A. McGlashan, Esq., McGlashan Law Firm, P.C., 733 Third Avenue, 16th Floor, New York, New York 10017 (212)203-8738
For Respondents Judith Planty and the Roman Catholic Church of Saints Simon and Jude: John G. Farinacci, Esq., Ruskin Moscou Faltischek, P.C., 1425 RXR Plaza, East Tower, 15th Floor, Uniondale, New York 11556 (516) 663-6600
For Respondent David G. Sewell: Richard J. Cea, Esq., Wingate, Kearney & Cullen, LLP, 111 John Street, Ste. 1040, New York, New York 10038 (718)852-5900
For the Charitable Beneficiary Respondents: New York State Office of the Attorney General by Deborah Yurchuk McCarthy, Esq., Charities Bureau, 28 Liberty Street, New York, New York 10005 (212) 416-8397

Peter J. Kelly, S.

In this contested proceeding pursuant to SCPA § 2102(4), Merlene Dinnal ("Dinnal") seeks the turnover of real property located at West 4th Street, Brooklyn that she alleges was specifically devised to her pursuant to the decedent's last will and testament dated April 30, 2011.
By way of pertinent background, on September 11, 1997, the decedent executed a trust agreement entitled the Hanlon Family Trust (the "Trust"). The Trust designated the decedent as trustee during her lifetime and Judith Planty ("Planty") as the successor trustee upon the decedent's incapacity or death. The Trust, by its terms, directed that upon the death of the decedent and William Hanlon, the corpus and undistributed income would be given and distributed as follows: Robert Mennell (20%); Eugene Erb (20%); Saints Simon and Jude Roman Catholic Church (10%); Irene Walmsley (10%); Richard Orenge (10%); Maryknoll Fathers and Brothers (5%); Deafness Research Foundation (5%); Covenant House (5%); Fathers of St. Edmund (5%); Eye Bank for Sight Restoration, Inc. (5%); and Mercy Boys' Home (5%).
Thereafter, on March 17, 1998, the decedent and William F. Hanlon executed a deed [*2]transferring their interests in the real property at issue to Grace E. Hanlon. Another deed was also executed for the same property transferring title from Grace E. Hanlon to Grace E. Hanlon as Trustee. The first deed was recorded on April 20, 1998, and the second was recorded the following day on April 21, 1998. Both deeds were made returnable to the law firm of Connors & Sullivan, Esqs.
On April 30, 2011, the decedent executed a purported will, which, in relevant part, provides that the decedent "revoke[s] all wills, codicils, and trusts heretofore made by me." Paragraph THIRD reads as follows:
I give all of my right, title and interest in my real property located at 1838 W. 4th Street, Brooklyn, New York, together with all buildings and improvements thereon and all contents thereof to MERLENE DINNAL, residing at 481 E. 51st Street, Brooklyn, New York. In the event MERLENE DINNAL shall not survive me, I authorize my Executor, in his absolute discretion, to sell such all of my right, title and interest in all real and personal property described in this THIRD Paragraph and to include the proceeds in my estate for disposition as provided in this document.
At all times during the preparation and execution of this document, David G. Sewell, Esq. ("Sewell"), the drafting attorney and nominated executor, was unaware that the decedent had previously deeded the subject real property into an inter vivos Trust.
Grace Hanlon died on October 19, 2011. Kings County Surrogate Diana A. Johnson signed a decree granting probate on June 2, 2014, and letters testamentary issued to Sewell. A tortured procedural history then commenced.
One year later, on July 14, 2015, Dinnal commenced this turnover petition in the Kings County Surrogate's Court, asserting that while attempting to sell the subject real property she had learned of the Trust agreement and the 1998 deed from a title search. Three months later, Dinnal filed an amended petition, which, in addition to the turnover of the subject real property, sought six alternative requests for declaratory relief. Answers and/or objections were thereafter filed by Sewell, Planty and the Roman Catholic Church of Saints Simon and Jude, and the Office of the Attorney General of the State of New York ("OAG") as the representative of the charitable beneficiaries of the inter vivos Trust.
Dinnal originally moved for summary judgment on this petition, and the OAG cross-moved for summary judgment, seeking a declaration that the title to the subject property was held by the Trust, and thus, should be disposed of according to the terms of the Trust. Planty and the Roman Catholic Church of Saints Simon and Jude supported the OAG's motion.
By decision dated July 14, 2016, Surrogate Johnson found that the "subject property was clearly transferred into the trust and remained therein at the time of the decedent's demise" and "it appears that the decedent reserved a general testamentary power of appointment (EPTL 10-3.2 and EPTL 3-3.3) for herself and/or any other successor trustee allowing her or the successor trustee to dispose of any property in the trust by the decedent's will." Surrogate Johnson denied both Dinnal's motion and the OAG's cross-motion for summary judgment, finding that the "decedent's intent with regards to the proper exercise of her power of appointment is an issue of fact." Petitioner's subsequent motion for leave to reargue was denied by Surrogate Johnson.
By decision and order dated February 27, 2019, the Appellate Division, Second [*3]Department affirmed Surrogate Johnson's Order, finding that the language governing Paragraph NINTH, which requires the decedent to make a specific reference to the Trust in her will to exercise a testamentary power of appointment, and Paragraph SECOND, which does not require a specific reference to the Trust to exercise a general testamentary power of appointment, was ambiguous. Based on such ambiguity, the Appellate Division concluded that extrinsic evidence was necessary to determine the decedent's intent and whether the bequest in her will, which did not contain a specific reference to the Trust, was sufficient under the terms of Trust to effectuate a transfer of the real property to Dinnal (see Matter of Hanlon, 169 AD3d 1039 [2d Dept. 2019]).
Dinnal thereafter moved for an order, inter alia, granting leave to file a second amended petition. By decision and order dated July 5, 2017, Kings County Acting Surrogate John G. Ingram granted this branch of her motion "to the extent that the petitioner is hereby granted leave to file an amended petition amending the portions of the petition upon which no determination has been made within 30 days of the date of this Decision and Order." On August 2, 2017, Dinnal filed a second amended petition, which in direct contravention of the order included claims for relief that had previously been denied by the Court.
A second summary judgment motion on this amended petition made by Dinnal was denied on April 10, 2018 by Surrogate Ingram. On appeal of this order, the Appellate Division affirmed the Surrogate's determination, holding that Dinnal's motion for summary judgment was precluded by the law of the case as "Dinnal had a full and fair opportunity to litigate the initial determination and [these] legal determinations were necessarily resolved on the merits" (Matter of Hanlon, 189 AD3d 1405, 1408 [2d Dept. 2020]). By order dated January 13, 2020, Surrogate Thompson then referred specified questions of fact, including, inter alia, whether the decedent intended to exercise her power of appointment with regards to the subject real property, to a referee for a hearing to take evidence and report back to the Court. Apparently, however, a hearing was never held nor a report submitted.
Thereafter, Planty and the Roman Catholic Church of Saints Simon and Jude moved for an order striking the second amended petition of Dinnal dated August 2, 2017 or, in the alternative, for leave to file amended objections pursuant to CPLR § 3025(b). Sewell and the OAG cross-moved for essentially the same relief. Not to be outdone, Dinnal cross-moved for an order seeking recusal of the King's County Surrogate pursuant to 22 NYCRR § 100.2; vacatur of a prior order of that Court dated July 14, 2016 as void for "lack of subject matter jurisdiction" pursuant to CPLR § 2221; vacatur, nunc pro tunc, of the order of that Court dated January 13, 2020 pursuant to CPLR § 2221 on the basis that it "contravenes SCPA 509"; approval of a 2017 amended petition pursuant to CPLR § 2221 and SCPA § 509; dismissal of the motion and cross-motions seeking to strike the 2017 amended petition; and an award of sanctions.
By decision and order dated August 16, 2021, Surrogate Thompson granted that branch of Dinnal's recusal cross-motion, and the remainder of the motion and cross-motions was held in abeyance pending reassignment of the matter. The estate proceedings were then reassigned to this Court.
By decision and order dated July 11, 2022, this Court struck the first branch of relief in Dinnal's second amended petition, which sought an order declaring that the April 2, 1998 deed did not complete delivery of the property to the Hanlon Family Trust and directing the Executor to promptly issue an Executor's deed conveying the property to Dinnal. This Court held, in [*4]relevant part, "title to the subject property rests in the trust", and "the question of title has been resolved and is the law of the case". The time for the parties to file amended answers to the second amended petition was extended. Other than permitting service of the amended answers, this proceeding was held in abeyance pending resolution of the proceeding to vacate the underlying probate decree (File No. 2022-2/D).
This stay was modified by order dated August 15, 2023, and on October 2, 2023, a hearing was held in accordance with the prior decisions of the Kings County Surrogate's Court and the Appellate Division to determine whether the decedent intended to exercise a power of appointment in accord with the terms of her inter vivos Trust such that the title to the real property would pass to Dinnal, the decedent's caretaker, or to the residuary beneficiaries set forth in the Trust. 
At the hearing on October 2, 2023, Dinnal, in her case in chief, simply offered a certified copy of the decedent's last will and testament dated April 30, 2011, which was accepted into evidence. None of the parties submitted other documentary evidence or called witnesses to offer testimony to demonstrate whether the decedent did, or did not, intend to exercise the subject power of appointment even though the Appellate Division's decision permitted such.
Dinnal's counsel merely argued that the only relevant evidence of the decedent's intent to exercise a power of appointment was set forth in the text of the will itself, and claimed the decedent intended to revoke the Trust by its terms. Respondents' counsel offered arguments in opposition. After the hearing, Dinnal, Planty and Saints Simon and Jude Roman Catholic Church, and Sewell submitted Post-Hearing Memorandums of Law. Based on the above, the Court finds as follows:
In this turnover proceeding, Dinnal has the burden of proof to show that the subject property is an asset of the estate (see Matter of Gacovino, 188 AD3d 1201 [2d Dept. 2020]; Matter of Elam, 140 AD3d 754 [2d Dept. 2016]). Thus, Dinnal had to show that any ambiguity in the Trust should be resolved in her favor (see Matter of DelGatto, 98 AD3d 975 [2d Dept. 2012]; Matter of Arnoff, 171 Misc 2d 172 [Sur Ct, New York Cnty. 1996]). By all measures, Dinnal failed to meet her burden.
As judicially determined in two decisions of the Kings County Surrogate's Court and two decisions of the Appellate Division, Second Department, the subject real property is titled in the Hanlon Family Trust. Specifically, the Appellate Division has held that "[c]ontrary to [Dinnal's] contention, the subject property was property owned by the trust as of the date of the decedent's death. . . and the decedent's will did not revoke the trust" (Matter of Hanlon, 169 AD3d 1039, 1040 [2d Dept. 2019]). Accordingly, Dinnal is barred from relitigating the issue of whether the decedent revoked the Trust by the law of the case doctrine (see People v Evans, 94 NY2d 499 [2000]; Brownrigg v New York City Hous. Auth., 29 AD3d 721 [2d Dept. 2006]).
Accepting, based on the record before it, the only evidence the Court has to glean the decedent's intent is contained in the Trust instrument, a careful review of its terms is instructive. Article SECOND provides:
The trustee shall distribute the corpus and any undistributed income of this trust according to the directions of the lifetime beneficiary contained within this instrument or specific instructions contained within the last will and testament of the lifetime beneficiary.
Article NINTH provides:
Notwithstanding anything to the contrary, donor may, by donor's last will and testament, containing a specific reference to this agreement, revoke any payments to be made to a remainderman beneficiary under this trust and shall have the power to alter the named remaindermen beneficiaries.
Applying well settled rules of construction, the Court cannot ignore Article NINTH's requirement "[n]otwithstanding anything to the contrary" to specifically refer to the Trust when altering the named remainder beneficiaries. The Court finds the use of the word "notwithstanding" signals that the decedent intended the provisions of Article NINTH to override conflicting provisions, if any, of all other Articles (see Cisneros v Alpine Ridge Group, 508 US 10 [1993]). The word "notwithstanding" is considered to be a trumping word that "controls over any contrary language" (Handlebar, Inc. v Utica First Ins. Co., 290 AD2d 633, 635 [3d Dept. 2002]; see Veneto Hotel & Casino, S.A. v German American Capital Corp., 160 AD3d 451 [1st Dept. 2018] [finding that a "notwithstanding" clause trumped a conflicting provision in the contract under review]).
Dinnal did not offer any evidence establishing that the decedent did not intend to require a specific reference to the Trust to exercise a power of appointment. While Dinnal cites to Matter of Will of Block for the proposition that "an effective exercise of a power of appointment need not refer to the power", the trust in Block, unlike the Trust here, did not impose a requirement that the power be exercised by specific reference (157 Misc 2d 716, 717 [Sur Ct., New York Cnty. 1993]). 
Moreover, despite arguments to the contrary, Articles SECOND and NINTH can be read consistently. They both provide a general power of appointment to the decedent that may be exercised by her will and, in default thereof, the remainder beneficiaries are to receive any remaining principal per the terms of the Trust. While Article SECOND provides that such an exercise must be made by "specific instructions", Article NINTH further refines "specific instructions" to include a "specific reference" to the Trust. Article SECOND does not preclude such a requirement, and Dinnal has failed to offer any extrinsic evidence to demonstrate otherwise. Factually, this conclusion is bolstered by the testimony of the drafting attorney, Sewell, who stated he knew nothing about the Trust and used an online template from the New York State Bar Association when preparing the document. Dinnal argues that the attorney draftsman's unawareness of the Trust is irrelevant (citing Matter of Cord, 58 NY2d 539 [1983]). However, the Court refers to the draftsman's unawareness only to highlight the fact that obviously no discussions of the Trust occurred during the drafting and execution of the decedent's will. Thus, the decedent either intentionally did not reference the Trust, realizing it made any devise in the will ineffective, or the decedent was not aware of the nature and extent of her assets and consequently lacked the capacity to execute the will (see Matter of Falkowsky 197 AD3d 1300 [2d Dept. 2021]). Accordingly, and as it is undisputed that the will does not specifically refer to the Trust, the Court finds the decedent never intended nor properly did exercise a power of appointment regarding the real property (see Matter of Dematteis, 38 Misc 3d 1221[A][Sur Ct, Queens Cnty. 2013]).
Dinnal next argues that the will revoked the Trust. It is undisputed that Dinnal is barred [*5]from relitigating the issue of whether the Trust was revoked pursuant to EPTL § 7-1.16, which provides that a revocable inter vivos trust can be revoked by "an express direction in the creator's will which specifically refers to such lifetime trust or a particular provision thereof."
However, Dinnal argues that the issue of whether the Trust was revoked pursuant to EPTL § 7-7.17(b) has never been judicially determined. That statute provides that "[a]ny amendment or revocation authorized by the trust shall be in writing and executed by the person authorized to amend or revoke the trust, and except as otherwise provided in the governing instrument, shall be acknowledged or witnessed in the manner required by paragraph (a)". Dinnal directs the Court's attention to the Appellate Division's 2019 Decision finding that "the decedent's will did not revoke the trust (see EPTL 7-1.16)" (Matter of Hanlon, 169 AD3d 1039, 1040 [2d Dept. 2019]). Dinnal contends that the use of the "see" signal supports her argument that neither the Kings County Surrogate's Court nor the Appellate Division addressed the issue of whether the Trust was revoked pursuant to EPTL § 7-7.17(b).
The "see" signal in a legal citation is used when "the proposition is not directly stated by the cited authority but obviously follows from it" (People v Crespo, 32 NY3d 176 [2018] citing The Bluebook: A Uniform System of Citation R 1.2[a], at 58 [Columbia Law Review Ass'n et al., 20th ed. 2015]). Consequently, the use of the "see" signal does not limit a court's finding to solely the one cited authority.
Additionally, Dinnal did, in fact, previously argue that the Trust was revoked by EPTL § 7-1.17(b). Both the original petition dated July 14, 2015 and the first Amended Petition dated October 8, 2015 seek a declaration that "if the property was transferred to the Trust, the Trust was revoked pursuant to EPTL 7-1.17(b)". Dinnal's Memorandum of Law in Support of Motion For Summary Judgment dated October 3, 2017 argues "Decedent exercised the right to revoke the Trust in the First Article of the Will. See EPTL § 7-1.16 and EPTL § 7-1.17" (emphasis added). As previously stated, this motion was denied by Surrogate Johnson's decision and order dated July 14, 2016, and the Appellate Division affirmed said decision (see Matter of Hanlon, 169 AD3d 1039 [2d Dept. 2019]). Moreover, the Appellate Division's 2020 Decision omits the "see" citation to EPTL § 7-1.16 altogether, stating "[h]ere, upon reviewing the July 14, 2016 order denying the Dinnal's motion for summary judgment on the 2015 petition, this Court affirmed, finding that '. . .the decedent's will did not revoke the trust.' [Matter of Hanlon, 169 AD3d at 1040 [citations omitted]" (Matter of Hanlon, 189 AD3d 1405, 1408 [2d Dept. 2020]).
Accordingly, as the issue of whether the Trust was revoked by the decedent's will was already addressed, Dinnal is once again barred from relitigating the same issue by the law of the case doctrine (see People v Evans, 94 NY2d 499 [2000]). Dinnal's contention that this Court did not dismiss the branch of her second amended petition dated August 2, 2017, seeking a declaration that "if the property was transferred to the Trust, the Trust was revoked pursuant to EPTL 7-1.17(b)", is, frustratingly, another improper attempt to relitigate an issue that has already been decided by four decisions and orders from courts of original and appellate authority.
And, in any event, EPTL § 7-1.17(b), in essence, provides that if the trust specifies how amendment or revocation must be made, an amendment or revocation will only be valid where that procedure has been followed (see In re Dodge's Trust, 25 NY2d 273 [1969]; Matter of Goetz, 8 Misc 3d 200 [Surr Ct, Westchester Cnty. 2005]). Yet, Dinnal has not proffered a written revocation by the decedent acknowledged or witnessed in the manner required by EPTL § 7-1.17.
Rather, Dinnal argues that EPTL § 7-1.17(b) permits revocation under Article EIGHTH and/or NINTH of the Trust. Article EIGHTH permits revocation by written notice to the trustee, signed by the decedent, and upon such notice, "the trustee shall forthwith convey, assign, transfer, pay over, and deliver all of the principal of said trust to the said donor, or as she shall direct." Here, there is no writing and there is no deed transferring the property from the decedent as trustee to herself. Dinnal argues that the will serves as the written notice required under Article EIGHTH. However, for the revocation to be effective the will had to comply with both EPTL §§ 7-1.16 and 7-1.17(b), which in turn requires compliance with Article NINTH's requirement that the will contain a specific reference to the Trust. As discussed above, the decedent never properly exercised a power of appointment under Article NINTH as there is no mention of the Trust in the will. Consequently, the Trust was not revoked, title to the real property, as has been previously determined, remained therein at the time of the decedent's death, and Dinnal's further arguments to the contrary are unavailing.
In conclusion, inasmuch as the Trust clearly requires specific reference to it in order to exercise a power of appointment, and the will clearly on its face does not do so, the will failed to properly exercise a power of appointment. Therefore, the purported bequest to Dinnal did not constitute a valid exercise of a power of appointment and fails. Accordingly, Dinnal's turnover petition is denied and dismissed.
This is the decision and decree of the Court.
Dated: January 18, 2024
SURROGATE